## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

)
**WOODS HOLE OCEANOGRAPHIC**    )
**INSTITUTION,**    )
      **Plaintiff,**    )
    )    **CIVIL ACTION NO.:**
**v.**    )
    )
**ATS SPECIALIZED, INC.,  RIDGEWAY**    )
**INTERNATIONAL USA, INC., GUY**    )
**TOMBS LIMITED, AUSTRALIAN**    )
**NATIONAL MARITIME MUSEUM,**    )
**SAM BROUGHTON WRIGHT, JR.,**    )
**SERVICE TIRE TRUCK CENTER, INC., AND** )
**TRAVELCENTERS OF AMERICA**    )
      **Defendants.**    )
_____)

## COMPLAINT

NOW COMES the Plaintiff, Woods Hole Oceanographic Institution, in the above entitled

Action, by and through its undersigned attorneys, Holbrook & Murphy, and asserts this

Complaint against the Defendants as follows:

## PARTIES

1.    The Plaintiff, Woods Hole Oceanographic Institution, (hereinafter "WHOI" or "Woods

Hole Oceanographic Institution"), is a nonprofit corporation, organized and existing under the

laws of the Commonwealth of Massachusetts, with a principal place of business located at 98

Water Street, Woods Hole, Massachusetts 02543. WHOI is dedicated to research and education

to advance understanding of the ocean and its interaction with the Earth system, and to

communicating this understanding for society's benefit.

2.    WHOI has vast knowledge, experience, and proficiency exploring, diving, discovering,

and operating in the deepest regions of the sea. For over a half-century, WHOI has been

building, operating, maintaining, managing, and repairing submersibles. WHOI has vast

knowledge, experience, and proficiency in the costs, expenses, and requirements of building,

operating, maintaining, managing, and repairing submersibles.

3.       At all times material hereto, WHOI was the owner of the human occupied vehicle (HOV)

*DEEP SEA CHALLENGER*, a custom-designed and built submersible capable of reaching full-

ocean depth. HOV *DEEP SEA CHALLENGER* (hereinafter "the Submersible") has been piloted

over six (6) miles beneath the surface to Challenger Deep, the deepest spot in the global ocean,

located at the southern end of the Mariana Trench.

4.       The Submersible incorporates many new technological advances. Among these is its

innovative materials, such as a highly sophisticated syntactic foam, and a high-quality video

imaging system capable of producing 3-D movies of the seafloor.

5.       The twenty-four foot (7.3 meter) Submersible has three main sections. The Submersible's

biggest section, the beam, is made of a new variety of syntactic foam, the only floatation material

capable of withstanding the crushing pressure of the deep ocean.

6.       The Submersible's specifications are as follows:

Displacement: 11.8 metric tons (13 short tons);
Dimensions (in dive attitude): 2.3m (7.7 ft.) X 1.7m (5.5 ft.) X 8.1m (26.6 ft.);
Test depth: 11,000m (36,000 ft.);
Personnel sphere: Steel, 6.4cm (2.5 in.) thick, 109cm (43 in.) diameter, .35m3 (12.4 ft3) working
volume;
Complement: 1;
Power: Max. 80 lithium ion battery boxes (16 Ah/3.6v ea.);
Propulsion: 12 thrusters;
Speed: 3 knots forward, 3.5 knots vertical;
Endurance: 56 hours;
Cameras: 4 external, 2 internal;
External lighting: 3 TY lights (42,000 lumens ea.); 26 LED brick lights (3,000 lumens ea.).

7.       Prior to the loss which is the subject matter of this complaint, the Submersible was valued

in excess of USD 30,000,000.00.

8.     WHOI is duly entitled to maintain this Action, and brings this Action on its own behalf, and as agent, trustee, assignee and/or subrogee, on behalf of and for the interests of all parties interested in and who were damaged as a result of the loss and damage to the Submersible, as their respective interests may ultimately appear. As used hereinafter, "Woods Hole Oceanographic Institution" and "WHOI" may refer to the Plaintiff, on its own behalf, and as agent, trustee, assignee and/or subrogee, on behalf of and for the interests of all parties interested in and who were damaged as a result of the loss and damage to the Submersible.

9.     Upon information and belief, the Defendant, ATS Specialized, Inc. (hereinafter "ATS") is a corporation organized and existing under the laws of the State of Minnesota, with a principal place of business at 725 Opportunity Drive, St. Cloud, Minnesota 53601.

10.     Upon information and belief, the Defendant, Sam Broughton Wright, Jr., is a resident and domiciliary of the State of South Carolina.

11.     Upon information and belief, the Defendant, Ridgeway International USA, Inc. (hereinafter "Ridgeway") is a corporation organized and existing under the laws of the State of New York, with a principal place of business at 1080 Military Turnpike, Plattsburgh, New York 12901.

12.     Upon information and belief, the Defendant, Guy Tombs Limited (hereinafter "Guy Tombs" or "Guy Tombs Limited") is a foreign corporation, with a principal place of business in Montreal, Canada. Guy Tombs is in the business of providing oversight, management, representation, and logistics with regard to the movement of cargo, and acting as a broker, freight forwarder, and carrier.  Guy Tombs actually performed, or purported to perform, these functions with regard to the loss that is the subject matter of this Complaint.

13.     Upon information and belief, the Defendant, Australian National Maritime Museum (hereinafter "ANMM") is an agency or other part of the Commonwealth of Australia with its principal place of business in the Commonwealth of Australia.

14.     Upon information and belief, the Defendant, Service Tire Truck Center, Inc. (hereinafter "STTC") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 2255 Avenue A, Bethlehem, Pennsylvania 18017. Upon information and belief, STTC is a registered foreign corporation in the Commonwealth of Massachusetts and has a place of business at 10 1st Street, Bridgewater, Massachusetts 02324.

15.     Upon information and belief, the Defendant, TravelCenters of America (hereinafter "TravelCenters" or "TravelCenters of America") is an Ohio Corporation with a place of business at 5930 East State Road 334, Whitestown, Indiana 46075.

## JURISDICTION

16.     WHOI asserts Causes of Action under the ICC Termination Act, formerly known as the Carmack Amendment, codified under 49 U.S.C. §§ 14706, *et seq.* (the "Carmack Amendment"). This Court has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1331.

17.     This Court has jurisdiction over any remaining claims in this Action pursuant to 28 U.S.C. § 1367.

18.     Venue for this Action is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 and 49 U.S.C.§ 14706.

## FACTUAL ALLEGATIONS

19.     For valuable consideration, WHOI and ANMM agreed that WHOI would loan the Submersible to ANMM, pursuant to a two-year loan agreement, with a right to extend the agreement for an additional five years (hereinafter "the Loan Agreement").

20.     ANMM was responsible for the safe "[c]ollection and return" of the Submersible.

21.     ANMM was responsible to "collect" the Submersible from WHOI at 86 Water Street, Woods Hole, Massachusetts 02543, USA.

22.     ANMM was responsible for the Submersible once it left WHOI's property.

23.     ANMM is required to indemnify WHOI against all "actions, claims, suits, demands, liabilities, losses, damages and costs (including all legal costs on a solicitor-client basis) directly or indirectly arising out of, relating to or in any way connected with any breach of [the Loan Agreement] by [ANMM] or of any of its promises and warranties in [the Loan Agreement]."

24.     ANMM "agree[d] to hold harmless, defend and indemnify [WHOI] from any and all claims, by any and all parties, their successors and heirs, for liabilities and costs incurred as a result of bodily injury, property damage, personal injury or other loss, by [ANMM] or any third parties, arising as a result of [ANMM's] activities in connection with [the Submersible]."

25.     ANMM agreed and had a duty to insure the Submersible such that the sum of USD 5,000,000.000 was available to respond to, *inter alia*, property loss, destruction or damage, including property loss, destruction or damage occurring during transit.

26.     ANMM was responsible for notifying its insurer if the Submersible was damaged while in ANMM's control.

27.     ANMM breached its agreement and duty to provide insurance cover of USD

5,000,000.00 for property loss, destruction or damage, including property loss, destruction or

damage occurring during transit.

28.     WHOI and ANMM specifically contemplated and agreed that ANMM's liability was not

capped, limited, constrained, or in any way restricted to the amount actually received under any

insurance policy.

29.     Upon information and belief, ANMM retained Guy Tombs to provide oversight,

management, representation, and logistics with regard to the movement of cargo, and to act as

broker, freight forwarder, and carrier.

30.     Guy Tombs breached its duties and obligations and provided the aforementioned services

in a negligent, careless, and unreasonable manner, proximately causing the subject loss and a

shortfall of applicable insurance coverage.

31.     Upon information and belief, and in consideration of certain agreed freight charges

thereupon paid or agreed to be paid, Ridgeway agreed to transport the Submersible, which was in

good order and condition, from Woods Hole, Massachusetts to Baltimore, Maryland and to there,

deliver same in like good order and condition.

32.     On or about July 22, 2015, Ridgeway issued a Truck Bill of Lading, terms prepaid (the

"Ridgeway Truck Bill of Lading"). The Ridgeway Truck Bill of Lading indicated a "pickup date

and time" of July 22, 2015, and a "delivery date and time" of July 23, 2015. The Ridgeway

Truck Bill of Lading indicated that the Submersible was to be delivered to Baltimore, Maryland.

The Ridgeway Truck Bill of Lading contained no terms, conditions, or provisions concerning

limitation of liability or choice of law. A true and correct copy of the Ridgeway Truck Bill of

Lading is attached hereto as Exhibit A. Prior to the loss which is the subject matter of this

complaint, Ridgeway did not issue any other document purporting to govern, control, reflect, or memorialize the contract of carriage.

33.     Upon information and belief, and in consideration of certain agreed freight charges thereupon paid or agreed to be paid, Ridgeway engaged ATS to prepare and transport the Submersible, which was in good order and condition, from Woods Hole, Massachusetts to Baltimore, Maryland, and to deliver same in like good order and condition. Ridgeway unilaterally engaged ATS without WHOI's approval or consent.

34.     On or about July 7, 2015, TravelCenters inspected, serviced, and repaired the truck/tractor-trailer owned, operated, and controlled by ATS, used to transport the Submersible (hereinafter "the Truck"). Thereafter, TravelCenters certified and declared that the Truck was safe and appropriate for the transport of cargo.

35.     TravelCenters "FOUND THAT THE REAR AXLE BRAKES WOULD NOT ADJUST A T [sic] ALL."  The TravelCenters Invoice issued in connection with the service and inspection further indicated that a TravelCenters technician "WAS ABLE TO REBUILD THE SLACK ADJUSTERS A ND [sic] GET THEM TO WORK PROPERLY.  AFTER DOING SO [the TravelCenters technician] SLI D [sic] THE TANDEMS.  PERFORMED TPRM AND FOUND NO ISSUES THE TRL PASSES DOT."  A true and correct copy of the TravelCenters Invoice is attached hereto as Exhibit B.

36.     TravelCenters breached its duties and obligations, and provided the aforementioned services in a negligent, careless, and unreasonable manner, proximately causing the subject loss.

37.     On or about July 22, 2015, under the direction, supervision, and control of the defendants Guy Tombs, Ridgeway, and ATS, ATS took possession of the Submersible, which was in good

order and condition, and loaded it onto the Truck for transport from Woods Hole, Massachusetts to Baltimore, Maryland.

38.     Approximately one (1) hour after departing Woods Hole, Massachusetts, en route to Baltimore, Maryland, the Truck transporting the Submersible experienced a single tire blow-out while driving northbound on Interstate 495 near Middleborough, Massachusetts.

39.     Following the single tire blow-out, STTC inspected, serviced, and repaired the Truck. Thereafter, STTC implicitly or explicitly certified and declared that the Truck was safe and appropriate for the transport of cargo.

40.     STTC breached its duties and obligations, and provided the aforementioned services in a negligent, careless, and unreasonable manner, proximately causing the subject loss.

41.     After a STTC technician replaced the Truck's damaged tire, the Truck proceeded to a TravelCenters facility in Greenwich, Rhode Island, where the Truck and the driver, Sam Broughton Wright, Jr., spent the night.

42.     On or about July 23, 2015, after departing the TravelCenters facility in Greenwich, Rhode Island, en route to Baltimore, Maryland, the Truck transporting the Submersible caught fire, burning the Submersible, and causing massive damage to the Submersible.

43.     The damages to the Submersible include, but are not limited to, damage to the Submersible's aesthetics, structure, buoyancy, and operational functionality.

44.     The Defendant carriers did not make delivery or return of the Submersible in like good order and condition as when shipped to, delivered to, and received by them, but on the contrary, made delivery of the Submersible in a damaged condition.

45.     The Defendant carriers breached their contractual and/or legal duties and obligations, and such breaches were the direct and proximate cause of the Submersible's damage.

46.     The damage to the Submersible did not occur as a result of an Act of God, a public enemy, any act of WHOI, any public authority, or inherent vice or nature of the Submersible.

47.     Only **after** damage to the Submersible occurred, for the first time, ATS purported to produce a Uniform Straight Bill of Lading. This document was not produced, shown, approved, seen, discussed, contemplated, or agreed to by WHOI prior to the movement of the Submersible, prior to the commencement of carriage, prior to the fire, and prior to the time when the Submersible sustained damage. A true and correct copy of the so called ATS Uniform Straight Bill of Lading, produced **after** the commencement of the Submersible's movement, **after** the commencement of carriage, **after** the fire, and **after** the time when the Submersible sustained damage is attached hereto as Exhibit C.

48.     As the so called ATS Uniform Straight Bill of Lading was not produced, shown, approved, seen, discussed, contemplated, or agreed to by WHOI prior to the movement of the Submersible, prior to the commencement of carriage, prior to the fire, and prior to the time when the Submersible sustained damage, any purported limitation of liability contained in the so called ATS Uniform Straight Bill of Lading is ineffective to limit liability for damage to the Submersible.

49.     At all times material hereto, WHOI would have rejected any and all proposed limitations of liability with regard to the Submersible, including but not limited to limitations of liability with regard to loading, stowing, transporting, carrying, unloading, insuring, overseeing, managing, controlling, and directing the Submersible.

50.     On or about April 1, 2016, WHOI mailed its formal Notice of Claim for the Submersible's damage to Ridgeway ("WHOI's Notice of Claim to Ridgeway").

51.     On or about April 1, 2016, WHOI mailed its formal Notice of Claim for the Submersible's damage to ATS ("WHOI's Notice of Claim to ATS").

52.     Through counsel, Ridgeway has denied any liability for the Submersible's damage. Through counsel, Ridgeway has asserted that Guy Tombs was an "associated and/or affiliated company" to Ridgeway International USA, Inc.

53.     Through counsel, ATS has denied WHOI's claim, and has submitted a settlement offer based on a bogus and inapplicable limitation of liability.

54.     ATS has breached its duty of good faith and fair dealing, and has acted in an unfair and deceptive manner by issuing a so called bill of lading **after** the subject loss.

55.     ATS has breached its duty of good faith and fair dealing, and has acted in an unfair and deceptive manner by purporting to rely on a so called "carriers limitation of liability" not in existence at the time of the loss.

56.     ATS has breached its duty of good faith and fair dealing, and has acted in an unfair and deceptive manner by purporting to rely on a so called limitation of liability that was never produced, shown, approved, seen, discussed, contemplated, or agreed to by WHOI prior to the subject loss.

57.     WHOI has incurred and will incur substantial losses and damages as a result of the damages to the Submersible, proximately caused by the Defendants' breaches of their contractual and/or legal obligations and duties.

58.     WHOI has performed all required conditions precedent in connection with the Submersible's shipment and carriage, as well as any and all other contractual obligations.

59.     WHOI has performed all required conditions precedent in connection with the Loan Agreement it entered into with ANMM.

60.     WHOI has performed all required conditions precedent necessary to maintain this Action.

61.     By reason of the foregoing, WHOI, and others on whose behalf WHOI brings this Action, have sustained substantial damages, losses, and expenses in an amount to be proven at trial, no part of which has been paid by the Defendants, although duly demanded, and despite the fact that the Defendants' liability for damages is reasonably clear.

## COUNT I
## CARMACK AMENDMENT
### Against ATS

62.     WHOI re-alleges and re-avers all of the allegations contained in Paragraph Numbered One (1) through Sixty-One (61), inclusive, and incorporates same by reference herein.

63.     The Carmack Amendment, codified at 49 U.S.C. Section 14706, imposes liability on a carrier for all losses relating to goods it transports in interstate commerce.

64.     By reason of the foregoing, as well as the relevant representations, the contract of carriage, and course of conduct, ATS was a carrier and/or forwarder and/or freight forwarder within the meaning of the Carmack Amendment, 49 U.S.C. § 14706, and materially deviated from and breached its duties and obligations under that law and/or under the contract of carriage and/or other applicable contracts or law.

65.     ATS, on its own or through its contractors and agents, took physical possession of the Submersible, which was then in good order and condition.

66.     The Submersible was damaged while in the physical possession of ATS, its agents, servants, and contractors.

67.     After ATS's possession, WHOI received the Submersible in a damaged condition.

68.     By reason of the foregoing, ATS has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

69.     ATS is liable to WHOI, and to others on whose behalf WHOI brings this Action, for damages under the Carmack Amendment.

**COUNT II**
**BREACH OF BAILMENT OBLIGATIONS**
**Against ATS**

70.     WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through Sixty-Nine (69), inclusive, and incorporates same by reference herein.

71.     ATS, acting on its own accord, or through its contractors, agents, servants, or sub-bailees was acting as bailee of the Submersible at the time it was damaged.

72.     ATS thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to properly safeguard, care for, and deliver the Submersible in the same condition as when entrusted to ATS and to perform its services as bailee, or to ensure that those services were performed, with reasonable care and in a non-negligent and properly secure manner.

73.     ATS breached those bailment obligations and negligently failed to deliver to WHOI, or its designees, the Submersible in the same good order and condition as it was received by ATS.

74.     By reason of the foregoing, ATS has caused damage to WHOI, and to others on whose behalf WHOI brings this Action, in an amount that will be proven at trial.

75.     By reason of the foregoing, ATS is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

## COUNT III
## NEGLIGENCE
### Against ATS

76.      WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered

One (1) through Seventy-Five (75), inclusive, and incorporates same by reference herein.

77.      ATS had a duty to exercise due care to secure, protect, and timely deliver the

Submersible to WHOI, or its designee, in the same good order and condition as when it was

received.

78.      ATS had a duty to exercise due care to properly maintain, operate, repair, and diagnose

its equipment, including the Truck which transported the Submersible.

79.      Through its negligence, gross negligence, recklessness, breaches of duty, acts, omissions,

and failure to exercise the requisite standard of care, ATS proximately caused damage to the

Submersible and failed to deliver the Submersible to WHOI in the same good order and

conditions as it was received by ATS.

80.      By reason of the foregoing, ATS has proximately caused damage, loss, and expense to

WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at

trial.

81.      By reason of the foregoing, ATS is liable to WHOI, and to others on whose behalf WHOI

brings this Action, for such damages as will be proven at trial.

## COUNT IV
## UNFAIR AND DECEPTIVE PRACTICES
### Against ATS

82.      WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered

One (1) through Eighty-One (81), inclusive, and incorporates same by reference herein.

83.     ATS agreed to act as a carrier and/or forwarder and/or freight forwarder of the Submersible, within the meaning of the Carmack Amendment.

84.     ATS knew or should have known that to limit its liability to less than the amount of the actual loss or injury, ATS must give the shipper fair opportunity to choose between two or more levels of liability prior to ATS taking custody of the shipment.

85.     ATS failed to give the shipper fair opportunity to choose between two or more levels of liability prior to taking custody of the Submersible, and has therefore in bad faith intentionally, willfully, maliciously, and wrongfully attempted to limit its liability for the Submersible's damage by producing the so called ATS Uniform Straight Bill of Lading **after** the movement of the Submersible, **after** the commencement of carriage, and **after** damage to the Submersible occurred.

86.     ATS knew or should have known, that to limit its liability to less than the amount of the actual loss or injury, ATS must issue a bill of lading that reflects any such agreement to limit liability prior to moving the shipment containing the Submersible.

87.     Prior to moving the shipment containing the Submersible, ATS failed to issue a bill of lading reflecting any agreement to limit liability.  In bad faith, ATS has intentionally, willfully, maliciously, and wrongfully attempted to limit its liability for the Submersible's damages by issuing the so called ATS Uniform Straight Bill of Lading **after** the movement of the Submersible, **after** the commencement of carriage, and **after** damage to the Submersible occurred.

88.     ATS has alleged that its liability to WHOI is limited pursuant to the terms and conditions of an "Ocean Bill of Lading." Neither ATS, nor any other party, has ever issued an Ocean Bill of Lading with regard to transport of the Submersible.

89.     ATS has failed and refused to produce any Ocean Bill of Lading with regard to the transport of the Submersible.

90.     ATS has breached its duty of good faith and fair dealing, and has acted in an unfair and deceptive manner, by purporting to rely on the terms and conditions of a so called Ocean Bill of Lading that was never produced, shown, approved, seen, discussed, contemplated, or agreed to by WHOI prior to the subject loss.

91.     ATS has breached its duty of good faith and fair dealing, and has acted in an unfair and deceptive manner, by purporting to rely on the terms and conditions of a so called Ocean Bill of Lading that was not in existence at the time of the loss.

92.     ATS has breached its duty of good faith and fair dealing, and has acted in an unfair and deceptive manner, by purporting to rely on the terms and conditions of a non-existent Ocean Bill of Lading.

93.     ATS's unfair and deceptive conduct is in violation of M.G.L. c. 93A.

94.     WHOI, and others on whose behalf WHOI brings this Action, are entitled to recover from ATS damages, statutory treble damages, exemplary damages, as well as all costs, interest, expenses, fees, and attorneys' fees arising out of the Submersible's damage and in bringing this Action.

## COUNT V
### CARMACK AMENDMENT
### Against Ridgeway

95.     WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through Ninety-Four (94), inclusive, and incorporates same by reference herein.

96.     The Carmack Amendment, codified at 49 U.S.C. Section 14706, imposes liability on a carrier for all losses relating to goods it transports in interstate commerce.

97.     By reason of the foregoing, as well as the relevant representations, the contract of carriage, and course of conduct, Ridgeway was a carrier and/or forwarder and/or freight forwarder within the meaning of the Carmack Amendment, 49 U.S.C. § 14706, and materially deviated from and breached its duties and obligations under that law and/or under the contract of carriage and/or other applicable contracts or law.

98.     Ridgeway, on its own or through its contractors and agents, took physical possession of the Submersible, which was then in good order and condition.

99.     The Submersible was damaged while in the physical possession of Ridgeway, its agents, servants, and contractors.

100.    After Ridgeway's possession, WHOI received the Submersible in a damaged condition.

101.    By reason of the foregoing, Ridgeway has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

102.    Ridgeway is liable to WHOI, and to others on whose behalf WHOI brings this Action, for damages under the Carmack Amendment.

## COUNT VI
## BREACH OF BAILMENT OBLIGATIONS
### Against Ridgeway

103.    WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred-Two (102), inclusive, and incorporates same by reference herein.

104.    Ridgeway, acting on its own accord, or through its contractors, agents, servants, or sub-bailees, was acting as bailee of the Submersible at the time it was damaged.

105.    Ridgeway thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to properly safeguard, care for, and deliver the Submersible in the same

condition as when entrusted to Ridgeway and to perform its services as bailee, or to ensure that those services were performed, with reasonable care and in a non-negligent and properly secure manner.

106.    Ridgeway breached those bailment obligations and negligently failed to deliver to WHOI, or its designees, the Submersible in the same good order and condition as it was received by Ridgeway.

107.    By reason of the foregoing, Ridgeway has caused damage to WHOI, and to others on whose behalf WHOI brings this Action, in an amount that will be proven at trial.

108.    By reason of the foregoing, Ridgeway is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

**COUNT VII**
**NEGLIGENCE**
**Against Ridgeway**

109.    WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Eight (108), inclusive, and incorporates same by reference herein.

110.    Ridgeway had a duty to exercise due care to secure, protect, and timely deliver the Submersible to WHOI, or its designee, in the same good order and condition as when it was received.

111.    Ridgeway had a duty to exercise due care to ensure that the Truck which transported the Submersible was properly maintained, operated, repaired, diagnosed, and in all respects suitable to transport the Submersible.

112.    Through its negligence, gross negligence, recklessness, breaches of duty, acts, omissions, and failure to exercise the requisite standard of care, Ridgeway proximately caused damage to

the Submersible and failed to deliver the Submersible in the same good order and conditions as it was received by Ridgeway.

113.     By reason of the foregoing, Ridgeway has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

114.     By reason of the foregoing, Ridgeway is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

**COUNT VIII**
**CARMACK AMENDMENT**
**Against Guy Tombs**

115.     WHOI re-alleges and re-avers all of the allegations contained in Paragraph Numbered One (1) through One Hundred Fourteen (114), inclusive, and incorporates same by reference herein.

116.     The Carmack Amendment, codified at 49 U.S.C. § 14706, imposes liability on a carrier for all losses relating to goods it transports in interstate commerce.

117.     Liability under the Carmack Amendment extends beyond the carrier who actually provides the transportation. It extends to any carrier "providing transportation or service." 49 U.S.C. § 14706(a)(1).

118.     The ICA defines a "motor carrier" as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12). The ICA further specifies that the term "transportation" includes "services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23)(B).

119.     Under 49 C.F.R. § 371.2(a) Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

120.     By reason of the foregoing, as well as the relevant representations, the contract of carriage, and course of conduct, Guy Tombs was a carrier and/or forwarder and/or freight forwarder within the meaning of the Carmack Amendment, 49 U.S.C. § 14706, and materially deviated from and breached its duties and obligations under that law and/or under the contract of carriage and/or other applicable contracts or law.

121.     Guy Tombs, on its own or through its contractors and agents took physical possession of the Submersible, which was then in good order and condition.

122.     The Submersible was damaged while in the physical possession of Guy Tombs, its agents, servants, and contractors.

123.     After Guy Tombs' possession, WHOI received the Submersible in a damaged condition.

124.     By reason of the foregoing, Guy Tombs has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

125.     Guy Tombs is liable to WHOI, and to others on whose behalf WHOI brings this Action, for damages under the Carmack Amendment.

## COUNT IX
## BREACH OF BAILMENT OBLIGATIONS
### Against Guy Tombs

126.   WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Twenty-Five (125), inclusive, and incorporates same by reference herein.

127.   Guy Tombs, acting on its own accord, or through its contractors, agents, servants, or sub-bailees, was acting as bailee of the Submersible at the time it was damaged.

128.   Guy Tombs thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to properly safeguard, care for, and deliver the Submersible in the same condition as when entrusted to Guy Tombs and to perform its services as bailee, or to ensure that those services were performed, with reasonable care and in a non-negligent and properly secure manner.

129.   Guy Tombs breached those bailment obligations and negligently failed to deliver to WHOI, or its designees, the Submersible in the same good order and condition as it was received by Guy Tombs.

130.   By reason of the foregoing, Guy Tombs has caused damage to WHOI, and to others on whose behalf WHOI brings this Action, in an amount that will be proven at trial.

131.   By reason of the foregoing, Guy Tombs is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

**COUNT X**
**NEGLIGENCE**
**Against Guy Tombs**

132.    WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered

One (1) through One Hundred Thirty-One (131), inclusive, and incorporates same by reference

herein.

133.    Guy Tombs had a duty to exercise due care to secure, protect, and timely deliver the

Submersible to WHOI, or its designee, in the same good order and condition as when it was

received.

134.    Guy Tombs had a duty to exercise due care to ensure that the Truck which transported the

Submersible was properly maintained, operated, repaired, diagnosed, and in all respects suitable

to transport the Submersible.

135.    Through its negligence, gross negligence, recklessness, breaches of duty, acts, omissions,

and failure to exercise the requisite standard of care, Guy Tombs proximately caused damage to

the Submersible and failed to deliver the Submersible in the same good order and conditions as it

was received by Guy Tombs.

136.    Guy Tombs agreed to procure insurance for the Submersible, such that USD

5,000,000.00 was available to cover any property damage or loss occurring while the

Submersible was in transit.

137.    The insurance procured by Guy Tombs contained a **"FULL VALUE CLAUSE"** which

provided in pertinent part:

> **FULL VALUE CLAUSE**
> If the Property covered by this insurance shall at the time of any loss or damage be of
> greater value than the sum insured hereby the Insured shall only be entitled to receive
> hereunder such proportion of the said loss or damage as the sum insured by the policy
> bears to the total value of the said property.

138.    Through its negligence, gross negligence, recklessness, breaches of duty, acts, omissions, and failure to exercise the requisite standard of care, Guy Tombs failed to obtain adequate insurance for the Submersible.

139.    By reason of the foregoing, Guy Tombs has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

140.    By reason of the foregoing, Guy Tombs is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

**COUNT XI**
**BREACH OF CONTRACT**
**Against Guy Tombs**

141.    WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Forty (140), inclusive, and incorporates same by reference herein.

142.    Guy Tombs agreed, warranted and promised (hereinafter "the Insurance Agreement") to procure insurance for the Submersible, such that USD 5,000,000.00 was available to cover any property damage or loss occurring while the Submersible was in transit.

143.    The insurance procured by Guy Tombs contained a **"FULL VALUE CLAUSE"** which provided in pertinent part:

> **FULL VALUE CLAUSE**
> If the Property covered by this insurance shall at the time of any loss or damage be of greater value than the sum insured hereby the Insured shall only be entitled to receive hereunder such proportion of the said loss or damage as the sum insured by the policy bears to the total value of the said property.

144.    In breach of the Insurance Agreement, Guy Tombs failed to obtain adequate insurance for the Submersible.

145.     By reason of the foregoing, Guy Tombs has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

146.     By reason of the foregoing, Guy Tombs is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

## COUNT XII
### BREACH OF CONTRACT
### Against ANMM

147.     WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Forty-Six (146), inclusive, and incorporates same by reference herein.

148.     ANMM had a duty under the Loan Agreement to ensure that the Submersible was properly safeguarded, was kept free from damage after it left WHOI's property, and that it was returned in the same good order and condition as when it was received.

149.     ANMM breached its duty to ensure that the Submersible was properly safeguarded, kept free from damage, and returned in the same good order and condition.

150.     ANMM had a duty to insure the Submersible such that USD 5,000,000.00 was available to cover any property damage or loss.

151.     ANMM breached its duty to provide adequate insurance coverage.

152.     ANMM has a duty to indemnify WHOI against all "actions, claims, suits, demands, liabilities, losses, damages and costs (including all legal costs on a solicitor-client basis) directly or indirectly arising out of, relating to or in any way connected with any breach of [the Loan Agreement] by it or of any of its promises or warranties in [the Loan Agreement]."

153.    ANMM has breached its duty to indemnify WHOI against all "actions, claims, suits, demands, liabilities, losses, damages and costs (including all legal costs on a solicitor-client basis) directly or indirectly arising out of, relating to or in any way connected with any breach of [the Loan Agreement] by it or of any of its promises or warranties in [the Loan Agreement]."

154.    ANMM has a duty to "hold harmless, defend and indemnify [WHOI] from any and all claims, by any and all parties, their successors and heirs, for liabilities and costs incurred as a result of bodily injury, property damages, personal injury or other loss, by [ANMM] or any third parties, arising as a result of [ANMM's] activities in connection with [the Submersible]."

155.    ANMM has breached its duty to "hold harmless, defend and indemnify [WHOI] from any and all claims, by any and all parties, their successors and heirs, for liabilities and costs incurred as a result of bodily injury, property damages, personal injury or other loss, by [ANMM] or any third parties, arising as a result of [ANMM's] activities in connection with [the Submersible]."

156.    By reason of the foregoing, and as a result of the damage to the Submersible and other failures, ANMM breached the Loan Agreement by, *inter alia*, failing to ensure that the Submersible was properly safeguarded, kept free from damage after it left WHOI's property, and returned in the same good order and condition as when it was received, failing to procure adequate insurance for the Submersible, failing to provide WHOI with a defense and indemnity in connection with the Submersible, and other conduct as will be shown at trial.

157.    By reason of the foregoing, ANMM has proximately caused damage, loss, and expense, to WHOI, and to others on whose behalf WHOI bring suit herein in an amount to be proven at trial, including attorneys' fees and defense costs.

## COUNT XIII
## BREACH OF BAILMENT OBLIGATIONS
### Against ANMM

158.　WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Fifty-Seven (157), inclusive, and incorporates same by reference herein.

159.　ANMM, acting on its own accord or through its contractors, agents, servants, or sub-bailees, was acting as bailee of the Submersible at the time it was damaged.

160.　ANMM thereby, or through its contractors, agents, servants, or sub-bailees, warranted and had a legal duty to properly safeguard, care for, and deliver the Submersible in the same condition as when entrusted to ANMM and to perform its services as bailee, or to ensure that those services were performed, with reasonable care and in a non-negligent and properly secure manner.

161.　ANMM breached those bailment obligations and negligently failed to deliver the Submersible to WHOI, or its designees, in the same good order and condition as it was received by ANMM.

162.　By reason of the foregoing, ANMM has caused damage to WHOI, and to others on whose behalf WHOI brings this Action, in an amount that will be proven at trial.

163.　By reason of the foregoing, ANMM is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

## COUNT XIV
## NEGLIGENCE
### Against Sam Broughton Wright, Jr.

164.     WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Sixty-Three (163), inclusive, and incorporates same by reference herein.

165.     Sam Broughton Wright, Jr. had a duty to exercise due care to secure, protect, and timely deliver the Submersible to WHOI, or its designee, in the same good order and condition as when it was received.

166.     Sam Broughton Wright, Jr. had a duty to exercise due care to ensure that the Truck which transported the Submersible was properly maintained, operated, repaired, diagnosed, and in all respects suitable to transport the Submersible.

167.     Through his negligence, gross negligence, recklessness, breaches of duty, acts, omissions, and failure to exercise the requisite standard of care, Sam Broughton Wright, Jr. proximately caused damage to the Submersible and failed to deliver the Submersible in the same good order and conditions as it was received by Sam Broughton Wright, Jr.

168.     By reason of the foregoing, Sam Broughton Wright, Jr. has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

169.     By reason of the foregoing, Sam Broughton Wright, Jr. is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

## COUNT XV
## BREACH OF BAILMENT
### Against Sam Broughton Wright, Jr.

170.    WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Sixty-Nine (169), inclusive, and incorporates same by reference herein.

171.    Sam Broughton Wright, Jr. was acting as bailee of the Submersible at the time it was damaged.

172.    Sam Broughton Wright, Jr. thereby, or through his contractors, agents, servants or sub-bailees, warranted and had a legal duty to properly safeguard, care for and deliver the Submersible in the same condition as when entrusted to Sam Broughton Wright and to perform his services as bailee or to ensure that those services were performed with reasonable care and in a non-negligent and properly secure manner.

173.    Sam Broughton Wright, Jr. breached those bailment obligations and negligently failed to deliver to WHOI, or its designees, the Submersible in the same good order and condition as received by Sam Broughton Wright, Jr.

174.    By reason of the foregoing, Sam Broughton Wright, Jr. has caused damage to WHOI, and to others on whose behalf WHOI brings suit herein.

175.    By reason of the foregoing, Sam Broughton Wright, Jr. is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

## COUNT XVI
## NEGLIGENCE
### Against TravelCenters of America

176.    WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Seventy-Five (175), inclusive, and incorporates same by reference herein.

177.    TravelCenters had a duty to exercise due care and to properly inspect, diagnose, repair, service, and maintain the Truck.

178.    TravelCenters had a duty to exercise due care to ensure that the Truck which transported the Submersible was properly maintained, operated, repaired, diagnosed, and in all respects suitable to transport the Submersible.

179.    Through its negligence, gross negligence, recklessness, breaches of duty, acts, omissions, and failure to exercise the requisite standard of care, TravelCenters proximately caused damage to the Submersible.

180.    By reason of the foregoing, TravelCenters has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

181.    By reason of the foregoing, TravelCenters is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

## COUNT XVII
## NEGLIGENCE
### Against Service Tire Truck Center, Inc.

182.    WHOI re-alleges and re-avers all of the allegations contained in Paragraphs Numbered One (1) through One Hundred Eighty-One (181), inclusive, and incorporates same by reference herein.

183.   STTC had a duty to exercise due care and to properly inspect, diagnose, repair, service, and maintain the Truck.

184.   STTC had a duty to exercise due care to ensure that the Truck which transported the Submersible was properly maintained, operated, repaired, diagnosed, and in all respects suitable to transport the Submersible.

185.   Through its negligence, gross negligence, recklessness, breaches of duty, acts, omissions, and failure to exercise the requisite standard of care, STTC proximately caused damage to the Submersible.

186.   By reason of the foregoing, STTC has proximately caused damage, loss, and expense to WHOI, and to others on whose behalf WHOI brings this Action, in an amount to be proven at trial.

187.   By reason of the foregoing, STTC is liable to WHOI, and to others on whose behalf WHOI brings this Action, for such damages as will be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Woods Hole Oceanographic Institution, hereby prays for the following relief:

1. An award for all amounts owed to WHOI, and to others on whose behalf WHOI brings suit herein;

2. An award for economic losses owed to WHOI, and to others on whose behalf WHOI brings suit herein;

3. An award for sue and labor expenses to WHOI, and to others on whose behalf WHOI brings suit herein;

4.  An award for property damage to WHOI, and to others on whose behalf WHOI brings suit herein;

5.  An award for loss of use of the Submersible to WHOI, and to others on whose behalf WHOI brings suit herein;

6.  An award for multiple damages to WHOI, and to others on whose behalf WHOI brings suit herein;

7.  An award for litigation costs and expenses to WHOI, and to others on whose behalf WHOI brings suit herein;

8.  An award of prejudgment and post-judgment interest to WHOI, and to others on whose behalf WHOI brings suit herein;

9.  An award to WHOI, and to others on whose behalf WHOI brings suit herein, of reasonable attorneys' fees and costs;

10. An award for other damages recoverable in law, equity, the full extent of which will be proven at trial to WHOI, and to others on whose behalf WHOI brings suit herein;

11. For such other and further relief as this Court deems just and equitable; and

12. For leave to amend pleadings and claims to conform to the evidence identified at trial.

**The Plaintiff demands trial by jury on all issues to which it is legally entitled.**

Respectfully Submitted,
The Plaintiff,
By their attorney,


/s/ Robert J. Murphy
Robert J. Murphy BBO# 557659
Samuel P. Blatchley BBO# 670232
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA  02110
(617) 428-1151
holbrook_murphy@msn.com
sblatchley@holbrookmurphy.com