# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WOODS HOLE OCEANOGRAPHIC INSTITUTION,<br><br>      Plaintiff,<br><br>v.<br><br>ATS SPECIALIZED, INC., RIDGEWAY INTERNATIONAL USA, INC., GUY TOMBS LIMITED, AUSTRALIAN NATIONAL MARITIME MUSEUM, SAM BROUGHTON WRIGHT, JR., SERVICE TIRE TRUCK CENTER, INC., AND TRAVELCENTERS OF AMERICA,<br><br>      Defendants. | CIVIL ACTION NO. 1:17-cv-12301-NMG |

## AUSTRALIAN NATIONAL MARITIME MUSEUM'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND LACK OF PERSONAL JURISDICTION

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

II.    FACTUAL BACKGROUND ......................................................................... 2

III.    LAW AND ARGUMENT ............................................................................. 7

    A.    The Museum Is Immune From Suit Under the FSIA ........................... 7

        1.    The Commercial Exception To FSIA Immunity Does Not Apply ............. 8

        2.    The Implied Waiver Exception Does Not Apply ..................................... 10

        3.    The Arbitration Exception Does Not Apply ............................................ 12

        4.    The Allegations Against the Museum Are Factually Wrong.................... 13

    B.    The Museum Is Not Subject To Personal Jurisdiction........................................ 15

        1.    Relatedness .................................................................................... 16

        2.    Purposeful Availment ....................................................................... 17

        3.    The Gestalt Factors .......................................................................... 18

IV.    CONCLUSION............................................................................................. 20

302271487v6 1003324

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argentine Republic v. Amerada Hess Shipping Corp.,*
    488 U.S. 428 (1989)..................................................................................................7

*Asahi Metal Indus. Co. v. Superior Court,*
    480 U.S. 102 (1987)................................................................................................18

*Aschenbrenner v. Conseil Regional de Haute-Normandie,*
    851 F.Supp. 580 (S.D.N.Y. 1984)........................................................................10

*Bristol-Myers Squibb v. Superior Court,*
    137 S.Ct. 1773 (2017)...........................................................................................16

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 478-479 (1985) ..............................................................................15

*Burwell v. Hobby Lobby Stores, Inc.,*
    171 S.Ct. 2751 (2014)...........................................................................................15

*Cargill Int'l S.A v. M/T Pavel Dabenko,*
    991 F.2d 1012 (2nd Cir. 1993)...............................................................................8

*Copia Commc'ns LLC v. AMResorts, L.P.,*
    812 F.3d 1 (1st Cir. 2016).....................................................................................17

*Drexel Burnham Lambert Grp. Inc. v. Committee of Receivers for Galadari,*
    12 F.3d 317 (2d Cir. 1993)....................................................................................11

*EM Ltd. v. Banco Cent. De La Republica Argentina,*
    800 F.3d 78 (2d Cir. 2015), *cert. dismissed*, 136 S.Ct. 1731 (2016) ........................................9

*Foster-Miller, Inc. v. Babcock & Wilcox Canada,*
    46 F.3d 138 (1st Cir. 1995)...................................................................................19

*Freund v. Republic of France,*
    592 F.Supp.2d 540 (S.D.N.Y. 2008)......................................................................8

*Helicopteros Nacionales v. Hall,*
    466 U.S. 408 (1984)..............................................................................................15

*Keeton v. Hustler Magazine,*
    465 U.S. 770 (1984)..............................................................................................17

302271487v6 1003324

*Lechoslaw v. Bank of Am., N.A.*,
    618 F.3d 49 (1st Cir. 2010)........................................................................................19

*Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*,
    184 F.Supp.2d 277 (S.D.N.Y. 2001).........................................................................9

*Merced v. JLG Indus., Inc.*,
    170 F.Supp.2d 65 ....................................................................................................17

*Newman v. European Aeronautic Defence & Space Co. EADS N.V.*,
    700 F.Supp.2d 156 (D. Mass. 2010) ........................................................................16

*Parex Bank v. Russian Sav. Bank*,
    116 F.Supp.2d 415 (S.D.N.Y. 2000).........................................................................15

*Paterson, Zochonis (U.K.), Ltd. v. Compania United Arrow, S.A.*,
    493 F.Supp. 621 (S.D.N.Y. 1980)..........................................................................12

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992).................................................................................................8

*Republic of Ecuador v. ChevronTexaco Corp.*,
    376 F.Supp.2d 334 (S.D.N.Y. 2005).........................................................................13

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)..........................................................................................8, 9, 10

*Sawtelle v. Farrell*,
    70 F.3d 1381 (1st Cir. 1995)..............................................................................16, 19

*Schoeps v. Bayern*,
    27 F.Supp.3d 540, 546 (S.D.N.Y. 2014)..................................................................14

*Smith v. Socialist People's Libyan Arab Jamahiriya*,
    101 F.3d 239 (2d Cir. 1996).....................................................................................11

*United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*,
    960 F. 2d 1080 (1st Cir. 1992)..................................................................................18

*Verlinden B.V. v. Central Bank of Nigeria*,
    461 U.S. 480 (1983).................................................................................................7

*W. Marine Prods., Inc. v. Dolphinite, Inc.*,
    2005 U.S. Dist. LEXIS 7489 (D. Mass. Mar. 23, 2005).........................................16

*Weinberg v. Grand Circle Travel, LLC*,
    891 F.Supp.2d 228 (D. Mass. 2012) .......................................................................17

302271487v6 1003324

*Williams v. Nat'l Gallery of Art*,
    2017 U.S. Dist. LEXIS 154445 (S.D.N.Y. Sep. 21, 2017) ........................................................9


**Statutes and Rules**

28 U.S.C.
    § 1330 ...........................................................................................................................1, 15
    § 1331 ..................................................................................................................................1
    § 1441 ..................................................................................................................................1
    §§ 1602-1611 ......................................................................................................................1
    § 1603 .................................................................................................................2, 7, 9, 10
    § 1604...............................................................................................................................2, 7
    § 1605 ...........................................................................................................................2, 7-13
    § 1607...................................................................................................................................7

Fed. R. Civ. Pro.
    12(b)(1) ...............................................................................................................................1
    12(b)(2) ................................................................................................................................1

Local Rule 7.1 ...................................................................................................................1

Foreign Sovereign Immunities Act of 1976,
    1976 U.S.C.C.A.N. 6604 (FSIA) ................................................................... *passim*


**Other Authorities**

15 C.F.R. Part 30.............................................................................................................12

19 C.F.R. § 141.32..........................................................................................................12

H.R. Rep. No. 94-1487, at 15-16 (1976) ..........................................................................7

Due Process Clause, U.S. Const., amend. XIV..................................................1, 2, 15

302271487v6 1003324

Pursuant to Local Rule 7.1 and Rule 12(b)(1) of the Federal Rules of Civil Procedure, AUSTRALIAN NATIONAL MARITIME MUSEUM (the "Museum") appears specially and not generally, to move to dismiss the complaint (the "Complaint" or "Comp.") of Plaintiff WOODS HOLE OCEANOGRAPHIC INSTITUTION ("WHOI" or "Plaintiff") for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976 (the "FSIA").[1]  In addition, the Museum, pursuant to Local Rule 7.1 and Fed. R. Civ. Pro. 12(b)(2), moves to dismiss Plaintiff's claims against the Museum for lack of personal jurisdiction under the Due Process Clause of the Fourteenth Amendment to the United States Constitution (the "Due Process Clause").  *See* U.S. Const., amend. XIV.

## I.      INTRODUCTION

Comity between nations, in this case, the Commonwealth of Australia and the U.S., requires that WHOI's claims against the Museum be dismissed.  The Museum is wholly owned by the government of the Commonwealth of Australia, and therefore pursuant to the FSIA, the Museum is not subject to suit in any U.S. court.  In addition, the Museum lacks any significant contacts with the Commonwealth of Massachusetts, and accordingly is not subject to personal jurisdiction in this Court.  All claims against the Museum must be dismissed with prejudice.

This case involves a plan by a Massachusetts non-profit organization, WHOI, to lend, on a not-for-profit basis, the small submarine *DEEP SEA CHALLENGER* (the "vessel") to another not-for profit organization, the Museum.  *See* Complaint ("Comp."), ¶¶ 1, 19.  The vessel was to be transported by truck from Massachusetts to Baltimore, where it was then to be transported by sea to Australia.  *Id.,* ¶ 31.  It never arrived.  During transit, a tire on the truck carrying the vessel caught fire in Connecticut, which Plaintiff claims damaged the vessel.  *Id.,* ¶ 42.  As a result,

---

[1]  *See* 28 U.S.C. §§ 1330, 1331, 1441(d), and 1602-1611.

1

Plaintiff has brought seventeen causes of action against seven different defendants. *Id.,* ¶¶ 1-187.

One of those defendants, and a unique one, is the Museum, which Plaintiff alleges breached contractual and bailment obligations to WHOI. *Id.,* ¶¶ 147-163. As Plaintiff admits, the Museum is an "agency or other part of the Commonwealth of Australia with its principal place of business in the Commonwealth of Australia." *Id.,* ¶ 13. However, under the FSIA, foreign states, including their agencies and instrumentalities, are immune from suit unless an FSIA exception to immunity applies. *See* 28 U.S.C. § 1604; *see also id.,* § 1603.[2] As will be explained below, the only exceptions to the Museum's immunity from suit which could be even considered in this case are the "commercial activity" exception, § 1605(a)(2), the implied waiver of immunity exception under § 1605(a)(1), and the arbitration exception of § 1605(6). None of these exceptions fit the facts of this case, so the strong presumption of immunity given by § 1604 of FSIA applies and the suit against the Museum should be dismissed for lack of subject matter jurisdiction.

Even though FSIA immunity is dispositive here, even if it did not apply, under the Due Process Clause the Museum is not subject to personal jurisdiction. Haling a museum on the other side of the world into court in Massachusetts does not meet constitutional due process minimum requirements, is completely contrary to the parties' intentions, and would offend basic notions of fair play and substantial justice. Under either analysis, the Museum respectfully requests that Plaintiff's complaint be dismissed without leave to amend, for lack of jurisdiction.

## II.    FACTUAL BACKGROUND

The Museum was established in 1990 by an act of the Australian Parliament, the

---

[2]   Unless otherwise stated, all statutory references are to FSIA, located at title 28 of the United States Code.

Australian National Maritime Museum Act 1990.  *See* Declaration of Peter Rout ("Rout Dec."), ¶ 3.  The Museum is entirely owned by the Australian government.  *Id.*  As Plaintiff admits, the Museum is an "agency or other part of the Commonwealth of Australia" with its principal place of business in the Commonwealth of Australia."  Comp., ¶ 13.  The functions of the Museum are to exhibit material from the national maritime collection of Australia, and maritime historical material loaned to the Museum.  Rout Dec., ¶ 4.  Other functions are to develop, preserve and maintain the national maritime collection of Australia, to disseminate information relating to Australian maritime history, and to conduct and arrange for research into Australian maritime history.  *Id.*  The Museum is funded by the Australian government; it operates on a not-for-profit basis, and in fact it does not make a profit.  *Id.*, ¶ 5.

The Museum does not operate in Massachusetts, and does not benefit economically from any conduct which takes place here.  *Id.*, ¶ 6.  Besides the loan of the vessel at issue here, the Museum has never borrowed any historical or cultural item from any Massachusetts entity nor lent any such item to any entity here.  *Id.*, ¶ 10.  The Museum conducted no for-profit transactions in Massachusetts, and besides this one cultural loan of the vessel, has conducted no non-profit transactions here either.  *Id., ¶¶* 10, 11.  In addition, the Museum does not purchase or sell any goods here; it does not advertise or distribute any marketing materials here; it does not and has not employed any residents here; it does not solicit any resident of Massachusetts to provide services to it; and no agent of the Museum has travelled to Massachusetts for the purpose of any profit making activity.  *Id., ¶¶* 12-16.  Further, the Museum is not now and never has been a corporation or partnership in Massachusetts and it has no Massachusetts subsidiary or affiliate.  *Id., ¶¶* 18.  Nor is the Museum registered to do business in Massachusetts, and it never has been.  *Id., ¶* 19.  The Museum does not maintain an office, warehouse, manufacturing or distributing

3

facility in Massachusetts. *Id., ¶* 20. It does not own or lease any personal property, real property or facility here– nor does the Museum maintain any bank or financial accounts, telephone numbers, websites or a mailing address here. *Id., ¶¶* 21-23.

Plaintiff WHOI is itself a non-profit Massachusetts corporation, with a principal place of business in Woods Hole. Comp., ¶ 1. It alleges that it is "dedicated to research and education to advance understanding of the ocean and its interaction with the Earth system, and to communicating this understanding for society's benefit." *Id.*

Plaintiff entered into a contract with the Museum for the loan of the vessel. Comp., ¶¶ 1, 19. Under the loan agreement, dated June 30, 2015, and which was signed in Australia, attached as Exhibit A to Peter Rout's declaration (but which WHOI failed to attach to its complaint), the length of the loan was potentially until 2020, though WHOI could terminate it after three years. Rout Dec., ¶ 7, Ex. A, Agreement ¶ 6, Variation Schedule ¶ 1. The Agreement was signed as part of the Museum's not-for-profit role to display artifacts of maritime interest to visitors. Rout Dec., ¶ 8. The Museum did not enter into the Agreement for any commercial reason but solely to further its not-for-profit role as an instrumentality of the Australian government. *Id.* In fact, the sole payment made by the Museum to WHOI of $30,000 (if it were to be fully paid) would average about $16 per day[3] if the loan of the vessel lasted for five years. *Id.* Under the Agreement, the Museum was to insure the vessel for $5 million; the Museum did so with a government of Australia insurer. Rout Dec., ¶ 9, Ex. B.

As spelled out in the Agreement, if informal resolution of disputes was not successful, the parties chose specifically to arbitrate *any* disputes in relation to any issue under the Agreement – not in the U.S.– but in London, in the U.K. Rout Dec., ¶ 24, Ex. A, ¶¶ 16.1-16.3 & Variation

---

[3] Less than the daily rental rate for a small car.

Schedule, Item 5, ¶ 15.4.  Although the parties agreed the law of Massachusetts would apply, the Agreement contains no provision by which the Museum expressed any intention of waiving jurisdictional challenges to litigation brought in American courts, including those of Massachusetts, state or federal.  Rout Dec., ¶ 24, Ex. A, Variation Schedule, Item 7, ¶ 21. (Indeed, the original agreement called for litigation in Australia, so the compromise on arbitration in the U.K. clearly shows that the parties never intended on litigating in the U.S. *See* Rout Dec., ¶ 24, Ex. A, ¶¶ 16-1-16.4.)  The Agreement contains an integration clause. *Id.*, ¶ 24, Ex. A, ¶ 22, Variation Schedule, Item 8, ¶ 22.2.

Under the Agreement, WHOI agreed to provide project management throughout the transportation of the vessel and the duration of the loan.  Rout Dec., ¶ 26, Ex. A, Schedule 4 of the Variation to Agreement).  The Museum did not agree to and did not perform any such services.  Rout Dec., ¶ 26.  Plaintiff also agreed to provide all labor and materials required to prepare the vessel, its launch and recovery cradle, and its simulator sphere for transport.  Rout Dec., ¶ 27, Ex. A, Schedule 4 of the Variation to Agreement.  Furthermore, it was WHOI which was to inspect the vessel prior to transport and upon arrival in Australia, not the Museum.  Rout Dec., ¶¶ 28, 30, Ex. A, Schedule 4 of the Variation to Agreement.

The Museum engaged a company called Ridgeway International to manage the pickup and transport of the vessel to Australia.  Rout Dec., ¶ 29.  To facilitate the transfer, Peter Rout, Assistant Director of the Museum, signed a document called a "Power of Attorney Designation As Export Forwarding Agent And Acknowledgement of Terms and Conditions" ("Export POA"), which had been presented to him by Ridgeway.  *Id.*, ¶ 32, Ex. C.  The sole purpose of this document was to facilitate the removal of the vessel from the U.S., which Mr. Rout understood was required by U.S. customs laws.  *Id.*  By signing this document, which was a

5

customs formality, Mr. Rout, acting on behalf of the Museum, did not intend to nor did he have the authority to subject the Museum to the jurisdiction of any court of the U.S. or waive any objection to the assertion of such jurisdiction.  Rout Dec., ¶ 32.

After the fire, WHOI terminated the Agreement.  *Id.*, ¶ 33, Ex. D.  The Museum also had multiple communications with representatives of Eagle Underwriting Group ("Eagle"), who insured the vessel for $6.5 million; WHOI representatives therein repeatedly told the Museum that Eagle was expected to and would pay for all damage to the vessel.  *Id.*, ¶¶ 34, 35.

Among the seventeen causes of action purported to be stated by Plaintiff, only two are alleged against the Museum -- for breach of contract and breach of bailment obligations.  *Id.*, ¶¶ 147-163.  The Complaint alleges that ATS Specialized, Inc. ("ATS"), a Minnesota-based trucking company, was hired by Ridgeway to transport the submarine by truck to Baltimore.  *Id.*, ¶¶ 33, 37.  (The Museum had never been advised that ATS would fulfill this role.  Rout Dec., ¶ 31.) The submarine was to be picked up in Massachusetts and delivered to Maryland for further shipment to the Museum in Australia.  *Id.*, ¶31.  The submarine was damaged by fire while being transported by ATS through Connecticut.  *Id.*, ¶ 42.  WHOI alleges that the Museum had a duty under the Agreement to safeguard the submarine and insure that it was transported safely and without damage, a duty to insure it adequately, and a duty to indemnify and hold WHOI harmless against all claims arising out of the Agreement.  *Id.*, ¶¶ 148-152.

Curiously, the complaint contains no allegation that *any* entity has sued WHOI, and therefore why WHOI claims indemnification is a mystery.  Also curious is WHOI's failure to point to any provision in the Agreement that required the Museum to safely transport the vessel in the U.S. when project management for the transport was being arranged by WHOI.

The breach of bailment cause of action alleges that the Museum had an unspecified duty

as bailee to safeguard the vessel and failed to do so, resulting in its damage.  (*Id.,* ¶¶ 158-163.)
No allegations of negligence are made against the Museum, which was not present.

## III.   LAW AND ARGUMENT

### A.   The Museum Is Immune From Suit Under the FSIA

The FSIA establishes a strong presumption of a foreign state's immunity from suit, with
"foreign state" being defined as including that state's "agenc[ies] or instrumentalit[ies]."
§§ 1603(a), 1604.  Under § 1603, an "agency or instrumentality" is "a separate legal person,
corporate or otherwise," and "which is an organ of a foreign state or political subdivision thereof,
or a majority of whose shares or other ownership interest is owned by a foreign state or political
subdivision thereof," and is neither a citizen of the U.S. nor created under the laws of a different
nation (called a "third country" in § 1603(b)(3).)  If a foreign state is haled into court in the U.S.,
then "[s]ubject to existing international agreements to which the [U.S.] is a party at the time of
enactment of this Act a foreign state ***shall be immune from the jurisdiction of the courts of the
[U.S.]*** and of the States except as provided in sections 1605 to 1607" of FSIA.  § 1604
(emphasis added.)  Thus, unless an exception to immunity can be found in sections 1605 to 1607
of FSIA, immunity applies and the case must be dismissed.  §§ 1604, 1603.  *See Argentine
Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989); *Verlinden B.V. v. Central
Bank of Nigeria*, 461 U.S. 480, 493-94 (1983).

The FSIA's legislative history shows that the term "agency or instrumentality" is to be
interpreted broadly: "[The] criterion that the entity be a separate legal person, is intended to
include a corporation, association, foundation, or any other entity which, under the laws of the
foreign state where it was created, can sue or be sued in its own name, contract in its own name
or hold property in its own name…."  H.R. Rep. No. 94-1487, at 15-16 (1976), *as reprinted* in
1976 U.S.C.C.A.N. 6604, 6614.

As movant, the Museum must make a *prima facie* showing that it is a "foreign state" under the Act. *Freund v. Republic of France*, 592 F.Supp.2d 540, 552 (S.D.N.Y. 2008). The Museum has demonstrated that it is a wholly owned entity of Australia, and indeed, Plaintiff agrees that the Museum is an "agency or other part" of the Commonwealth of Australia. *See* Rout Dec., ¶¶ 3-5, Comp., ¶ 13. Having satisfied this initial burden, Plaintiff has "the burden of going forward with evidence showing that, under exceptions to FSIA, immunity should not be granted." *Cargill Int'l S.A v. M/T Pavel Dabenko*, 991 F.2d 1012, 1016 (2nd Cir. 1993).

The only exceptions to immunity under FSIA that could possibly be raised by Plaintiff are the commercial activity exception under § 1605(a)(2), the implied waiver provision under § 1605(a)(1) and the arbitration exception under § 1605(a)(6). To decide whether any exception applies, this Court must look at the substance of the allegations. *Cargill*, 991 F.2d at 1019. As set forth below, here none of these exceptions comes close to being met.

### 1.    The Commercial Exception To FSIA Immunity Does Not Apply

The FSIA's denial of subject matter jurisdiction over agencies of foreign states does not apply to "commercial activities" of the foreign state. § 1605(a)(2). To determine whether conduct falls within the exception, the Supreme Court holds that courts must determine whether the conduct at issue is the type which private parties engage in for "trade and traffic or commerce". *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). If the conduct involved is "peculiar to sovereigns," of a type in which private citizens cannot engage, the exception does not apply. *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993) (quoting *Weltover*, 504 U.S. at 614). Analysis of the "the *context* of a transaction is required." *Weltover*, 504 U.S. at 615 (italics in original). Only "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, [are] the foreign sovereign's actions … 'commercial' within the meaning of the FSIA." *Id.* at 614.

8

Plaintiff's two causes of action against the Museum do not satisfy the commercial exception to sovereign immunity.  Both the breach of contract and breach of bailment theories concern a not-for-profit loan of a cultural and historical artifact.  Both entities involved are not-for-profit enterprises and this entire dispute involves the not-for-profit exchange of a historical and cultural artifact, the vessel.  Rout Dec., ¶ 8.  Indeed, no allegation in WHOI's almost 200 paragraph complaint alleges that the Museum entered into the Agreement for commercial rather than cultural reasons.  Indeed, WHOI describes itself as a not-for-profit enterprise seeking to educate the public about the oceans and the Earth system (Comp., ¶ 1) and therefore, the allegations themselves highlight the non-commercial nature of the claims.

Moreover, operating a large public Museum is an activity "peculiar to sovereigns"[4] (*Saudi Arabia*, *supra*, 507 U.S. at 360), and receiving the loan of a submarine *gratis* for public display is not an activity in which private citizens typically engage.  *Williams v. Nat'l Gallery of Art*, , 2017 U.S. Dist. LEXIS 154445, at *19 (S.D.N.Y. Sep. 21, 2017) (loan of painting to a museum in the U.S. not enough to invoke the commercial activity exception to the FSIA).  More importantly, however, a plaintiff's claim does not properly rest upon a foreign state's commercial activity in the U.S. under § 1605(a)(2), when that activity is 'incidental' to the foreign state's activities outside the U.S.  *Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F.Supp.2d 277, 292 (S.D.N.Y. 2001); *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 97-98 (2d Cir. 2015), *cert. dismissed*, 136 S.Ct. 1731 (2016).

What constitutes "commercial" under § 1605(a)(2) is illuminated by §§ 1603(d) and (e), which state that a commercial activity is either a regular course of commercial conduct or a particular commercial transaction (judged by its nature, not its purpose).  A "commercial activity

---

[4] Only a sovereign can operate a national museum.

302271487v6 1003324

carried on in the [U.S.]" means "commercial conduct carried on by such state and having substantial contact with the [U.S.]." § 1603(e). *See also Saudi Arabia*, *supra*, 507 U.S. at 356. Here, the sole non-profit act of borrowing the non-commercial vessel for display in Australia, to the extent it was even an activity conducted in the U.S. at all, certainly does not meet the "substantial contact" test of § 1603(e). Indeed, courts have found that art exhibits do not fall within the "commercial exception" even when there is a profit motive (which is absent here). *See Aschenbrenner v. Conseil Regional de Haute-Normandie*, 851 F.Supp. 580, 585 (S.D.N.Y. 1984). ("[M]y conclusion that the Exposition was not a commercial activity does not rest on the organizers' lack of a profit motive. The FSIA's express command that the 'commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose,' 28 U.S.C. § 1603(d), forecloses such reasoning. Rather, my conclusion rests on the dissimilarity between how the Exposition was organized and presented -- particularly the lack of any financial transactions between the Conseil and the artists -- and how a typical profit-seeking project is organized and presented.")

In short, the loan of the vessel from one non-profit cultural institution to another non-profit cultural institution was not "commercial." To describe this transaction as "commercial" in nature does offense to the work of government-run museums everywhere, ignores the plain terms of the Agreement between WHOI and the Museum, and would stretch the "commercial" exception to FSIA immunity far beyond Congress' intent. The commercial exception simply does not apply to Plaintiff's allegations or the nature of the Agreement itself.

## 2. The Implied Waiver Exception Does Not Apply

Plaintiff may also assert that the implied waiver of immunity under § 1605(a)(1) applies to this action. The facts and circumstances – and the law – tell a much different story. FSIA

immunity is lost in a case "in which the foreign state has waived its immunity either explicitly or by implication, …" § 1605(a)(1).  The jurisprudence is clear that implied waivers are only found in "circumstances in which the waiver was unmistakable" and "unambiguous".  *Drexel Burnham Lambert Grp. Inc. v. Committee of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir. 1993).  Similarly, the implied waiver provision of the FSIA is to be narrowly construed.  *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir. 1996).

The facts of this case disprove waiver of immunity, either implied or explicit.  The original agreement provided for any litigation to be held in Australia.  Rout Dec., ¶ 24, Ex. A, ¶ 16.1-16.4.  The Variation Schedule changed that locale – not to the U.S., but to the U.K..  *Id.* at Variation Schedule, ¶ 16.4.  If anything, the modifications (to which WHOI agreed) demonstrate an *explicit* non-waiver of immunity from jurisdiction in the U.S. court system.  That Massachusetts substantive law would apply to arbitration in the U.K. is of no moment – as any substantive law can be applied in whatever jurisdiction the parties choose – since it is clear that the parties chose *not* to litigate any dispute arising from the Agreement in the U.S.  This is the only result of the negotiation of the Agreement that makes sense.  Any suggestion otherwise by the Plaintiff is contrary to the plain facts and the terms of the very Agreement it signed.[5]

Moreover, the very agreement which Plaintiff accuses the Museum of breaching, was, according to Plaintiff, terminated by its own terms.  *See* Rout Dec., ¶ 33, Ex. D, stating that the Agreement was "presently terminated."  The inherent inconsistency in the argument that the Museum could be subject to a waiver of sovereign immunity via a contract that Plaintiff itself admits has been terminated is apparent.

---

[5]   The Museum has not waived the arbitration provision of the Agreement, and if this motion is denied, the Museum reserves every right to fully enforce the terms of that agreement by filing an appropriate motion.

A final note is addressed because the Museum believes that WHOI may assert that, by the Museum's signing of an Export POA (*see* Rout Dec., ¶ 32) with Ridgeway (not WHOI), the Museum waived its immunity under FSIA.  This argument should be rejected out of hand.  First, as the Southern District of New York has held, signing forms necessitated by law does not waive FSIA immunity.  In a suit involving a Chinese shipping entity, the plaintiffs argued that it waived its sovereign immunity by executing an "Application for Certificate of Financial Responsibility" with the Federal Maritime Commission, which application appointed a U.S. company as its agent for service of process in the U.S.  *Paterson, Zochonis (U.K.), Ltd. v. Compania United Arrow, S.A.*, 493 F.Supp. 621, 623-24 (S.D.N.Y. 1980).   The court rejected the argument that this government-required form was a waiver of sovereign immunity.  *Id.* at 623-24.

Precisely the same argument applies here.  The Export POA was generated to satisfy certain requirements of 15 C.F.R. Part 30 and is similar to Customs Form 5291, which is used for "Customs business" under 19 C.F.R. § 141.32.  No legal basis exists for the assertion that execution of customs documents waives sovereign immunity.  If it did, no sovereign could borrow anything from anyone in the U.S. without waiving its rights to sovereign immunity.  And as explained above, Mr. Rout did not have authority to sign this document for any purpose other than to comply with customs requirements to enable the vessel to be brought to Australia.  Rout Dec., ¶ 32.  Nor did Mr. Rout intend to waive sovereign immunity.  *Id.*  Moreover, the Export POA was a matter solely between Ridgeway and the Museum, which does not even reference WHOI.  The Export POA provides no basis for the application of the waiver exception.

### 3.     The Arbitration Exception Does Not Apply

The only other possible exception that Plaintiff may assert to FSIA immunity is the arbitration exception in § 1605(a)(6) (arguing the Museum impliedly waived its immunity from suit by agreeing to arbitrate any dispute with WHOI if other informal means of dispute resolution

failed).  Application of the arbitration exception under these facts would turn the exception on its head and would result in a gross deviation from the parties' intent in entering in to the Agreement and the explicit terms of the Agreement which require arbitration in the U.K..  The arbitration exception only applies when the action filed is (i) to enforce an agreement to arbitrate brought by the sovereign; (ii) to enforce an arbitration agreement for the benefit of a private party, *i.e.* WHOI; or (iii) to confirm an arbitration award.  § 1605(a)(6).

That Plaintiff ignores its arbitration obligations is telling.  WHOI did not bring an action to enforce the arbitration provision it agreed to –instead, it simply ignored it and filed a lawsuit.  As courts have made clear, this exception does not apply to any *lawsuit,* but only to an action to enforce an arbitration provision – which Plaintiff has tried to avoid, rather than enforce.  *See Republic of Ecuador v. ChevronTexaco Corp.*, 376 F.Supp.2d 334, 364-65 (S.D.N.Y. 2005) ("By its terms… [Section] 1605(a)(6) *applies only to an action brought to enforce the arbitration agreement or confirm the arbitration award.*  It is perfectly consistent to say that a foreign state is immune from jurisdiction in a context other than a petition to enforce an arbitration agreement or confirm an arbitration award, but may nevertheless be compelled to arbitrate under [Section] 1605(a)(6)(A).")   No legal or statutory basis exists here to find an exception to sovereign immunity based on the agreement to arbitrate in London.

As demonstrated above, the statutory exceptions do not apply to WHOI's claims against the Museum for fire damage caused by a trucker while the vessel was in Connecticut, thousands of miles away from Australia where the Museum is located.  The FSIA applies and the claims against the Museum should be dismissed without leave to amend.

### 4.    The Allegations Against the Museum Are Factually Wrong

Yet another basis exists for dismissal: WHOI's allegations against the Museum are factually wrong and unsupportable.  In considering lack of jurisdiction under the FSIA, courts

13

can reject an argument that an exception to the FSIA exists if the complaint is devoid of supportable facts. *See Schoeps v. Bayern,* 27 F.Supp.3d 540, 546 (S.D.N.Y. 2014) ("And the other 'direct' effects alleged by plaintiffs, such as the alleged act of conversion or the sale of New York property, have already been found by this Court to be factually unsupported."

Here, all evidence indicates that WHOI's breach of contract allegations against the Museum are simply untrue. WHOI alleges that the Museum failed to obtain $5 million in insurance for the vessel. Comp. ¶¶ 150-151. The Museum obtained $20 million in insurance! Rout Dec., ¶ 9, Ex. B. WHOI also alleges that the Museum failed to keep the vessel safe and free from damage. Comp., ¶¶ 148-149. WHOI does not state what provision of the Agreement required WHOI to keep the vessel free from damage while the vessel was in the U.S. (because no provision so requires); rather, the Agreement required that WHOI provide the labor and materials to transport the vessel to Australia and to provide project management during transit. Rout Dec., ¶¶ 26-27, Ex. A, Schedule 4 of Variation to Agreement. The Museum cannot be responsible for WHOI's obligations since the damage occurred while WHOI bore responsibility. Given these facts, WHOI's allegations that the Museum was required to indemnify it for breaches of the Agreement (Comp. ¶ 152) makes no sense. For any indemnification from the Museum to be required, the Museum would have to breach the Agreement (which it did not do) and some action seeking to hold WHOI liable would have to have been filed by some other entity. No entity has sought to hold WHOI liable for damage to the submarine. WHOI's allegations of breach of contract against the Museum are simply a ruse (indeed, WHOI is the party in breach since it failed to initiate arbitration).

WHOI's "Breach of Bailment Obligations" cause of action (Comp. ¶¶ 158-163) fares no better. As noted, the Agreement contains an integration clause (Rout Dec., ¶ 24, Ex. A, ¶ 22,

Variation Schedule, Item 8, ¶ 22.2) and therefore WHOI can only pursue its breach of contract claims.  WHOI's purported breach of bailment cause of action is duplicative of its purported breach of contract claim and should not affect the Court's analysis of this motion.

**B.      The Museum Is Not Subject To Personal Jurisdiction**

That the Museum is immune under the FSIA should be dispositive, but the Court has another reason to dismiss the claims against the Museum: the personal jurisdictional requirements of the Due Process Clause.  While application of § 1330(b) of the FSIA, if applied to Australia itself, might foreclose a motion to dismiss on personal jurisdiction grounds, courts have recognized that the FSIA treats instrumentalities of sovereigns differently.  The reason § 1330(b) does not apply to instrumentalities is that instrumentalities may be **persons** subject to due process protections, even though the sovereign itself is not (a sovereign is not a "person"; *see Parex Bank v. Russian Sav. Bank,* 116 F.Supp.2d 415, 421-22 (S.D.N.Y. 2000)) (due process concerns need to be addressed for instrumentalities of sovereigns).  Indeed, not only has the Supreme Court recognized corporations as persons (*see Burwell v. Hobby Lobby Stores, Inc.,* 171 S.Ct. 2751, 2761-63 (2014)), but it has long applied the due process jurisdictional analysis to foreign entities other than sovereigns, recognizing them as "persons" under the Constitution.  *See Helicopteros Nacionales v. Hall*, 466 U.S. 408, 409-10 (1984) (applying minimum contacts analysis to a Colombian company, Helicopteros).

A single quotation from the Supreme Court proves the Museum's position with regard to personal jurisdiction: the Supreme Court stated in *Burger King Corp. v. Rudzewicz*, "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.  The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests."  471 U.S. 462, 478-79 (1985).  No such mechanical tests are even

needed here – because based on this one isolated transaction and the parties' expectations, no personal jurisdiction can be constitutionally asserted.

The Supreme Court has recognized two types of personal jurisdiction since its touchstone decision in *International Shoe*: general and specific. *Bristol-Myers Squibb v. Superior Court*, 137 S.Ct. 1773, 1779-80 (2017). "General jurisdiction exists when …the defendant …engaged in continuous and systematic activity, unrelated to the suit in the forum state…Specific jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *Newman v. European Aeronautic Defence & Space Co. EADS N.V.*, 700 F.Supp.2d 156, 164 (D. Mass. 2010).

Here, the Museum is not subject to either general or specific personal jurisdiction. The Museum has not engaged in any "continuous and systematic" activity here. The Agreement in question was a one-time occurrence.[6] Therefore, for personal jurisdiction to be asserted over the Museum by this Court, Plaintiff must establish that specific jurisdiction exists over the Museum through the three-part test outlined by the First Circuit.

1.      **Relatedness**

The first consideration under the three-part test is whether Plaintiff's claim arises out of, or relates to, the Museum's in-forum activities. "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir. 1995)*.* The First Circuit explained

---

[6]  The Museum does not transact business, does not sell or purchase goods and does not have any other continuous and systemic connections to Massachusetts, as attested to by Peter Rout; indeed, Plaintiff has not alleged to the contrary in the Complaint.  *See W. Marine Prods., Inc. v. Dolphinite, Inc.,* 2005 U.S. Dist. LEXIS 7489, *20 (D. Mass. Mar. 23, 2005) (lack of offices, agents, employees or salesmen, i.e., total lack of presence here, make it clear that party has not engaged in continuous and systemic activity).

302271487v6 1003324

that a court must consider whether the plaintiff's cause of action can "conceivably be said to have arisen directly from, or been caused proximately by," the defendant's contacts with the forum. *Merced v. JLG Indus., Inc.*, 170 F.Supp.2d 65, 74.

The Museum simply negotiated the borrowing of a vessel from WHOI.  The Museum never took physical possession of it; it signed the contract in Australia and expected that the vessel would be delivered in Australia.  Plaintiff's claim arose from alleged damage suffered during transit in Connecticut, not here.  The claim does not arise from negotiations that took place here; thus any support for a breach of contract claim is lacking.  Rather, the alleged damage to WHOI is damage to the vessel (for which WHOI has already received $3.9 million).  However, no action or inaction taken by the Museum caused damage to the vessel.  As *Burger King* posits, that the Museum entered into one contract with the Plaintiff is not sufficient to establish that the Museum's in-forum activities relate to the Plaintiff's claims.  Absent evidence of even a minimal relation between Museum's activities and Plaintiff's claims, the Museum should not be subject to personal jurisdiction in here.

## 2.      Purposeful Availment

The second factor is whether the Museum's contacts represented a purposeful availment of the forum.  This requirement ensures that personal jurisdiction is not premised solely on the defendant's "random, isolated or fortuitous" contacts.  *Keeton v. Hustler Magazine,* 465 U.S. 770, 774 (1984).  The Court should focus on the "voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction."  *Copia Commc'ns LLC v. AMResorts, L.P.*, 812 F.3d 1, 5 (1st Cir. 2016).  "The focus of the analysis is on whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable.'"   *Weinberg  v.  Grand  Circle  Travel,  LLC*,  891  F.Supp.2d  228,  245-46

(D. Mass. 2012).

The Museum has not purposefully availed itself of the privilege of conducting business here.  The Museum is a government entity in Australia.  It does not own or operate any property here, conduct for-profit transactions here, purchase or sell goods here, advertise here or employ anyone here.  The Museum does not provide items or services to residents here and has never registered to do business here.  The Museum lacks any true connection to this state, and its one effort to borrow a submarine which happened to be located here (and which was never even delivered to the Museum) is by definition isolated and does not constitute purposeful availment.[7]

Notably, even though the vessel was loaned from Massachusetts, it was to be displayed in Australia for the entire loan term.  The Museum did not avail itself of this market because the "product" was being taken **out of** Massachusetts, not brought here.  Furthermore, the vast majority of the time to be spent in transit to Australia would be spent outside Massachusetts, and any risk of damage to the submarine would be outside of Massachusetts, as is shown by what occurred here.  Therefore, even though the Museum signed an agreement with a Massachusetts entity, it did not purposefully avail itself of the Massachusetts market such that personal jurisdiction would be constitutionally permissible.

### 3.    The Gestalt Factors

Although WHOI's failure to demonstrate purposeful availment warrants dismissal, the third prong of the inquiry further buttresses the argument.  If the first two prongs of the test for specific jurisdiction have been fulfilled, the "gestalt factors" are then to be considered.  *United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F. 2d 1080, 1091, n. 11 (1st Cir.

---

[7]  *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) ("[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.")  And here, the loan was not into "commerce".

18

1992).  The five "gestalt factors" are as follows: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient relief; (4) the judicial system's interest in obtaining effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *Sawtelle v. Farell*, 70 F.3d 1381, 1394 (1st Cir. 1993).  The primary function of weighing these factors is to put into "sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 150 (1st Cir. 1995).  The Museum does not maintain an office or conduct business here.  It is an Australian government entity, far removed from Massachusetts.  Defending a lawsuit here and requiring travel here would be both burdensome and costly to the citizens of Australia.  *See Lechoslaw v. Bank of Am.*, *N.A.*, 618 F.3d 49, 55 (1st Cir. 2010) (No jurisdiction over Polish bank which had no agents and did no business in Massachusetts).[8]  With respect to the second factor, Massachusetts' interest in adjudicating its citizen's claim is offset by the fact that most of the relevant conduct took place elsewhere.  The Agreement was executed by the Museum in Australia.  The vessel was to be displayed in Australia and was damaged in Connecticut.  The parties' negotiations clearly show that they intended on *avoiding* litigation in the U.S.[9]  As for factors three, four and five, WHOI should not pursue claims against the Museum here; it agreed to arbitration in London.  Moreover, WHOI has already been paid $3.9 million and has six other defendants to pursue in this action.  But the most compelling factor here is recognition of the comity of nations and the interests of the U.S. not to impose jurisdiction on a foreign government when that government's contacts with the forum are minimal and isolated.  Accordingly, the

---

[8]  Indeed, legal fees have already cost the Museum more than the $30,000 loan payment.
[9]  The original situs for dispute resolution was Australia, and the parties *compromised* on the U.K.  Rout Dec., ¶ 24, Ex. A, ¶¶ 16.1-16.3 & Variation Schedule, Item 5, ¶ 16.4.

19

Gestalt factors support the absence of personal jurisdiction.

## IV.   CONCLUSION

To maintain comity between nations, and because the Museum is subject to neither general nor specific jurisdiction here, the Museum's motion should be granted, dismissing WHOI's claims against it without leave to amend.

Respectfully submitted,

AUSTRALIAN NATIONAL MARITIME
MUSEUM
By: Its Attorneys

*/s/ Chad M. Vacarella*
Chad M. Vacarella, BBO #637394
  cvacarella@hinshawlaw.com
HINSHAW & CULBERTSON LLP
53 State Street, 27th Floor
Boston, MA 02109
Telephone: 617-213-7013
Facsimile:  617-213-7001

Date:  July 27, 2018

*/s/ Forrest Booth*
Forrest Booth (Pro hac vice application pending)
  fbooth@hinshawlaw.com
Cal. State Bar 74166
Pamela L. Schultz (Pro hac vice application pending)
  pschultz@hinshawlaw.com
Cal. State Bar 269032
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone: 415-362-6000
Facsimile:  415-834-9070

## CERTIFICATE OF SERVICE

I, Chad M. Vacarella, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and sent by first class mail to all others on July 27, 2018.

*/s/ Chad M. Vacarella*
Chad M. Vacarella

20