# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDERSON TRUCKING SERVICE, INC., | Civil Action No. |
| Plaintiff, | 3:17-cv-00817 (CSH) |
| v. | |
| EAGLE UNDERWRITING GROUP, INC., WOODS HOLE OCEANOGRAPHIC INSTITUTION, RIDGEWAY INTERNATIONAL USA, INC., AUSTRALIAN NATIONAL MARITIME MUSEUM, | AUGUST 23, 2018 |
| Defendants. | |

## RULING ON MOTIONS TO DISMISS [DOCS. 32, 33, 47] AND ON MOTION FOR JURISDICTIONAL DISCOVERY [DOC. 39]

**HAIGHT, Senior District Judge:**

Plaintiff Anderson Trucking Service, Inc. ("Anderson" or "Plaintiff"), brings this declaratory judgment action against Defendants Eagle Underwriting Group, Inc. ("Eagle"); Woods Hole Oceanographic Institution ("WHOI"); Ridgeway International USA, Inc. ("Ridgeway"); and the Australian National Maritime Museum ("Museum"). This matter involves a submersible owned by WHOI, on loan to the Museum, and in transit on Anderson's vehicle when it was damaged by fire. Anderson brings this suit seeking a declaration that it is not liable for any damage incurred by the submersible; or in the event it is found liable for such damage, its liability is limited. Each Defendant has moved to dismiss the Complaint; those motions are resisted by Plaintiff. In response to the motions to dismiss, Plaintiff has moved for leave to conduct jurisdictional discovery, a motion opposed by Defendants. This Ruling resolves the pending motions.

1

# I.    PROCEDURAL BACKGROUND

Plaintiff brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a). This Act, however, "does not by itself confer subject matter jurisdiction on the federal courts. Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) (internal citation omitted).

The Complaint, filed on May 17, 2017, alleges that the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, as this action arises under the laws of the United States and under an Act of Congress regulating interstate commerce; specifically, the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701; or, alternatively, the Carmack Amendment to the Interstate Commerce Commission Termination Act, 49 U.S.C. § 14706, and the amount in controversy exceeds $10,000. Complaint, Doc. 1 ¶ 8. Plaintiff also invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332, asserting that the parties are completely diverse, and that the amount in controversy exceeds $75,000, exclusive of interests and costs. *Id.* at ¶ 9.

On November 21, 2017, WHOI filed an action in the District of Massachusetts against Anderson, Ridgeway, the Museum, and other defendants, seeking damages, fees and costs.[1] *Woods Hole Oceanographic Institution v. ATS Specialized, Inc.*, 1:17-CV-12301(NMG) (D. Mass. 2017)

---

[1] Defendant Eagle is not a party to the Massachusetts action. The other defendants appearing in the Massachusetts action include Sam Broughton Wright, Jr.; Guy Tombs Limited; Service Tire Truck Center, Inc.; and TravelCenters of America.

2

("Massachusetts Action").

On November 22, 2017, in the instant matter, the Museum filed a motion to dismiss the declaratory judgment complaint, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Doc. 32. The Museum contends that this Court lacks subject matter jurisdiction, pursuant to the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. §§ 1602 *et seq.*[2] *Id.* On November 30, 2017, Defendants WHOI and Eagle jointly filed a motion to dismiss, pursuant to Rule 12(b)(2), for lack of personal jurisdiction; pursuant to Rule 12(b)(6), for failure to state a claim; and pursuant to Rule 12(b)(7), for failure to join indispensable parties. Doc. 33. In the alternative, the motion seeks transfer of this action to the District of Massachusetts, and also urges the Court to abstain from exercising jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *Id.*

On December 22, 2017, also in this case, Anderson filed a motion seeking leave to conduct jurisdictional discovery. Doc. 39. On January 9, 2018, Ridgeway filed a motion to dismiss the complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2), and for failure to state a claim, pursuant to Rule 12(b)(6). Doc. 47. In the alternative, Ridgeway's motion states that to the extent that the complaint is dismissed against any co-defendant for lack of personal jurisdiction, or if any

---

[2] The Museum also moves to dismiss the Complaint pursuant to Rule 12(b)(6) contending that the Complaint fails to state a claim because the Court lacks subject matter jurisdiction. *See* Doc. 32 at 1. The Museum's motion further notes that it is "not subject to personal jurisdiction" because it "lacks significant contacts with both the United States and Connecticut." *Id.* The Museum states that should the Court deny its motion to dismiss, it "will file a motion to dismiss for lack of personal jurisdiction." *Id.* Without intimating any view on this position, the Court notes that under the FSIA, "federal courts are empowered to exercise personal jurisdiction over a foreign sovereign when two conditions obtain: (1) an exception from jurisdictional immunity established by the FSIA applies, and (2) the sovereign has been served with process in accordance with the FSIA's provisions." *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 104 (2d Cir. 2017) (footnote omitted) (citing 28 U.S.C. § 1330(b)); *see also Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir. 1991) ("Under the FSIA personal jurisdiction [over a foreign sovereign] equals subject matter jurisdiction plus valid service of process.").

indispensable party cannot be joined, the complaint should be dismissed. *See id.*

On February 23, 2018, the Court held oral argument on the pending motions. Doc. 72.

## II. FACTUAL BACKGROUND

The following facts are derived from the Complaint, Doc. 1.

Anderson, the declaratory Plaintiff, is a Minnesota corporation with its principal place of business in Minnesota. Doc. 1 ¶ 1.

As for Defendants: Eagle is an insurance company organized and existing and with its principal place in Canada. *Id.* ¶ 2. WHOI is a corporation organized and existing in Massachusetts, with its principal place of business in Massachusetts. *Id.* ¶ 3. Ridgeway is a corporation organized and existing in New York, with its principal place of business in New York. *Id.* ¶ 4. The Museum is an agency or part of the Commonwealth of Australia, with its principal place of business in Australia. *Id.* ¶ 5.

The Complaint does not allege any specific facts which would allow the Court to establish jurisdiction over the Defendants, beyond the allegations that Defendants Eagle and the Museum are "authorized to conduct business" in the United States and in Connecticut. *Id.* ¶¶ 2, 5.

Anderson alleges that WHOI and/or the Museum contracted with Ridgeway, a freight forwarder, or a Non-Vessel Operating Common Carrier ("NVOCC"), to arrange for the transport of a "used submarine" from Woods Hole, Massachusetts to Australia. Doc. 1 ¶ 13. The submarine was to be provided without charge to the Museum by WHOI. *Id.* ¶ 14. According to Anderson, the transport of the submarine was to be one continuous movement "on a through, ocean, or combined transport bill of lading or waybill, subject to Ridgeway's terms of service." *Id.* ¶ 15-16. Those terms provide that WHOI and the Museum will not file any claim, or have any right of recovery against

4

any subcontractor of Ridgeway for damage or loss. *Id.* ¶ 19.

Anderson alleges that it was notified by Ridgeway that the value of the submarine was five million dollars. *Id.* ¶ 23. Anderson informed Ridgeway that at the quoted price to transport the submarine, $1600, it would not accept liability for the full value of the vessel. *Id.* Anderson told Ridgeway that its customers should purchase insurance, and such insurance was indeed purchased from Eagle. *Id.* ¶ 24-5.

Anderson alleges that Ridgeway arranged for the transportation of the submarine. *Id.* ¶ 20. With the authority to act as an agent for WHOI and/or the Museum, Ridgeway contracted with Anderson, a motor carrier, to transport the submarine on its first leg of the journey, from Woods Hole, Massachusetts, to Baltimore, Maryland. *Id.* ¶ 21-22. The submarine was to then travel by ocean carrier from Baltimore to Australia. *Id.* ¶ 20.

On July 23, 2015, Anderson and Ridgeway took possession of the submarine in Woods Hole. *Id.* ¶ 25. While en route on I-95 in Connecticut, Anderson's trailer caught fire, resulting in damage to the submarine. *Id.* ¶ 26.

On April 1, 2016, Eagle and WHOI sent a claim to Anderson for damage to the submarine, in the amount of $8,307,101. *Id.* ¶ 27. "Upon information and belief," Eagle has at least partially indemnified WHOI and/or [the Museum] for the loss, "and is fully or partially subrogated to Woods Hole's and/or [the Museum's] claim against [Anderson] to the extent of this indemnification." *Id.* ¶ 28.

## III.   DISCUSSION

Defendants raise a number of issues in support of their motions for dismissal, but common to each of the motions is the argument that the complaint should be dismissed for lack of jurisdiction

(subject matter or personal jurisdiction, depending on the Defendant involved).

The Museum contends that this Court lacks subject matter jurisdiction over the claims brought against it, pursuant to the FSIA. Defendants WHOI, Eagle, and Ridgeway argue that this action should be dismissed against them for lack of personal jurisdiction. In response to the Defendants' motions to dismiss on jurisdictional grounds, Anderson moves for leave to conduct jurisdictional discovery. Each of the motions presents questions regarding the scope of this Court's authority to hear this matter. The Court will address those questions in the first instance.

## A.     The FSIA

The Museum, a defendant in this matter, is a corporation "empowered to act on behalf of the Commonwealth" of Australia, and is owned by the Australian government. Declaration of Peter Rout, Doc. 32-2 ¶ 2. The Museum is funded by the Australian government and operates on a non-for-profit basis. *Id.* As an arm of a sovereign foreign state, the Museum asserts that it is immune from the jurisdiction of this federal court under the FSIA, 28 U.S.C. § 1602 *et seq*. Consequently, the Museum argues, this Court lacks jurisdiction over the claims asserted against it in this matter.

On a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005). "In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. The Court does not, however, draw all reasonable inferences in the plaintiff's favor." *Hijazi v. Permanent Mission Of Saudi Arabia to United Nations*, 689 F. Supp. 2d 669, 670 (S.D.N.Y.) (citation omitted), *aff'd,* 403 F. App'x 631 (2d Cir. 2010).

Under the FSIA, a "a foreign state shall be immune from the jurisdiction of the courts of the

United States," unless a statutorily enumerated exception applies. 28 U.S.C. § 1604. "The FSIA thus provides the sole basis for obtaining jurisdiction over a foreign sovereign in the United States." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) (quotation marks and citation omitted); *see also Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 106 (2d Cir. 2016) (same), *cert. denied sub nom.*, *Sovereign Wealth Fund Samruk-Kazyna JSC v. Atl. Holdings, Inc.*, 137 S. Ct. 493 (2016). The FSIA "broadly immunizes foreign states from the jurisdiction of the courts of the United States, subject to a number of specified exceptions." *MMA Consultants 1, Inc. v. Republic of Peru*, 719 F. App'x 47, 51 (2d Cir. 2017) (quotation marks and citation omitted).

> Once a defendant establishes that it is, indeed, a "foreign state" under the FSIA, the defendant is presumptively immune from suit in federal court. *Swarna v. Al-Awadi*, 622 F.3d 123, 143 (2d Cir. 2010). The plaintiff must then "establish by a preponderance of the evidence that an exception under the FSIA permits jurisdiction over the foreign sovereign." *Id.* If the plaintiff does indeed establish by a preponderance of the evidence that an FSIA exception applies, "the foreign sovereign then bears the ultimate burden of persuasion that the FSIA exception does not apply." *Id.*

*MMA Consultants 1, Inc.*, 719 F. App'x at 51. *See also Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010) ("The ultimate burden of persuasion remains with the party seeking sovereign immunity.").

Here, it is undisputed that the Museum is a political subdivision of the Commonwealth of Australia, and that jurisdiction may only be obtained over the Museum in accordance with the FSIA.[3]

---

[3] The FSIA's definition of a foreign state expressly "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state," and defines an "agency or instrumentality of a foreign state" as any entity

> (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof,

7

As a foreign state under the FSIA, the Museum is entitled to a presumption of immunity. Accordingly, Anderson must establish that an exception to the FSIA applies to permit the Court's jurisdiction over the Museum. Anderson contends that the FSIA's "commercial activity" exception, 28 U.S.C. § 1605(a)(2), applies.

"The single most important exception to foreign state immunity under the FSIA . . . is the commercial-activity exception." *Atlantica Holdings*, 813 F.3d at 106 (quotation marks and citation omitted). The commercial activity exception provides that a foreign state is not immune from jurisdiction in any case

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). "As is plain from the language of the section, each of its three clauses describes different categories of conduct for which the foreign state is denied immunity. A showing that one condition is met is sufficient for the commercial activity exception to apply." *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012) (internal quotation marks and citations omitted).

Here, Anderson asserts that the first and second clauses of section 1605(a)(2) pertain to the present matter, contending that when "the Museum entered into the Loan Agreement with WHOI [for the loan of the submarine] and the contract with Ridgeway for the transportation of the submarine, it engaged in commercial activity." Doc. 51 at 4. Anderson reasons that the Loan

---

and(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(a)-(b).

8

Agreement and the transportation contracts are "the type of actions by which a private party engages

in trade and traffic or commerce." *Id.* at 6 (quoting *Weltover*, 504 U.S. at 614). Anderson argues that

the Museum "has become a player in a commercial market," and that the suit seeks "a declaration

of rights arising from the Museum's activities in the market." Doc. 51 at 7.

The FSIA defines commercial activity as "either a regular course of commercial conduct or

a particular commercial transaction or act." 28 U.S.C. § 1603(d)."[W]hen a foreign government acts,

not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's

actions are 'commercial' within the meaning of the FSIA." *Weltover*, 504 U.S. at 614. As *Weltover*

instructs us, the inquiry is

> not whether the foreign government is acting with a profit motive or instead with the
> aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the
> particular actions that the foreign state performs (whatever the motive behind them)
> are the *type* of actions by which a private party engages in trade and traffic or
> commerce.

*Id.* (quotation marks and citation omitted); *see also* 28 U.S.C. § 1603(d) ("The commercial character

of an activity shall be determined by reference to the nature of the course of conduct or particular

transaction or act, rather than by reference to its purpose.").

The threshold step for determining whether Anderson has properly invoked the commercial

activity exception to the FSIA is to examine the nature of the act of the Museum that serves as the

basis for Plaintiff's claim. *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 177

(2d Cir. 2010). Here, Anderson brings this declaratory judgment action to determine its liability for

damage to a submersible that occurred when the vessel was in transit to Australia. Submissions from

the parties indicate that the Museum entered into a loan agreement with WHOI for the submersible,

and then engaged a freight forwarder, Ridgeway, to assist in transporting the vessel from the United

9

States to Australia. Ridgeway, in turn, arranged with Anderson to transport the submersible on the ground portion of the journey, from Woods Hole, Massachusetts, to Baltimore, Maryland. The record contains a copy of a power of attorney, signed by the Museum, granting the freight forwarder certain rights and powers, and agreeing to abide by Ridgeway's terms of service. Pursuant to the unsigned loan agreement contained in the record, it appears, and is alleged, that the Museum was obligated to procure insurance for the submarine. Ridgeway has submitted a declaration stating that, on behalf of the Museum, it arranged for insurance to cover the submersible's transportation from Massachusetts to Australia, and "then charged [the Museum] for the cost of the Cargo Policy." Doc. 49-1 at 14.

These actions are inherently commercial. They are acts that could be performed by private parties; indeed, such acts are performed by private parties on a daily basis. Courts examining similar activities carried on by foreign sovereigns have determined that such activities are commercial in nature for the purposes of the FSIA. *See, e.g., In re Air Crash Near Nantucket Island, Massachusetts, on Oct. 31, 1999*, 392 F. Supp. 2d 461, 468–69 (E.D.N.Y. 2005) ("MISR's issuance of the Hull and Liability Policy was clearly a commercial activity[.]"), *aff'd in part, appeal dismissed in part sub nom.*, *The Boeing Co. v. Egyptair*, No. 05-5986-CV, 2007 WL 1315716 (2d Cir. May 7, 2007); *Malewicz v. City of Amsterdam*, 362 F. Supp. 2d 298, 314 (D.D.C. 2005) ("[I]t is clear that the City of Amsterdam engaged in 'commercial activities' when it loaned the 14 Malewicz works to museums in the United States. There is nothing 'sovereign' about the act of lending art pieces, even though the pieces themselves might belong to a sovereign. Loans between and among museums (both public and private) occur around the world regularly."); *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 898 F. Supp. 2d 301, 313–14 (D. Mass.

10

2012) (finding that a "series of agreements and powers of attorney" executed by the foreign sovereign, "as well as the work conducted" in service of those agreements by [plaintiff] and the attorneys that it hired, constitute commercial activity on which the instant litigation is based"), *aff'd*, 727 F.3d 10 (1st Cir. 2013).

In moving for dismissal, the Museum characterizes its activities in connection with this action as the "borrowing of a submarine for a nominal cost to display in a national museum," and contends that such are not activities which can be undertaken by private parties. *See* Doc. 56 at 10. The Museum's argument, in essence, is that the *purpose* of the activities in which the Museum engaged was sovereign; however, the FSIA makes it clear that the relevant inquiry is the *nature* of the activities, not their purpose. Further, it is well established that when a foreign sovereign engages in commercial activity, "that activity retains its commercial nature, even though the foreign sovereign acts without a profit motive." *Weltover, Inc. v. Republic of Argentina*, 941 F.2d 145, 150 (2d Cir. 1991) (footnote omitted), *aff'd*, 504 U.S. 607 (1992); *see also NML Capital, Ltd. v. Republic of Argentina*, 680 F.3d 254, 260 (2d Cir. 2012) (finding that a foreign sovereign's "lack of a profit motive is simply irrelevant"). Thus, the Museum's argument is unpersuasive.

However, a finding that the Museum engaged in a commercial activity does not end the inquiry. It must still be determined whether that activity falls within one or another of the three specified categories of the commercial activity exception. That is to say: the FSIA's commercial activity exception requires a showing that the action is "based upon" (1) a commercial activity carried on in the United States by the Museum; (2) an act performed in the United States in connection with a commercial activity of the Museum elsewhere; or (3) an act outside of the United States in connection with commercial activity outside the United States, where there are direct

11

effects in the United States. 28 U.S.C. § 1605(a)(2). In the case at bar, Anderson, seeking to invoke the commercial activity exception against the Museum, relies upon the first and second of these categories.

In the context of the commercial activity exception to the FSIA, the term 'based upon' "calls for something more than a mere connection with, or relation to, commercial activity." *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993) (footnote omitted). An "action is based upon the particular conduct that constitutes the gravamen of the suit." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015) (quotation marks and citation omitted)). The gravamen of a suit is described as the "basis" or "foundation" of a claim, or "those elements that, if proven, would entitle a plaintiff to relief." *Id.* at 395 (quotation marks and citation omitted). Thus, to determine whether an action is "based upon the particular conduct that constitutes the gravamen of the suit," "[r]ather than individually analyzing each of the . . . causes of action," a court must "zero[] in on the core" of the suit. *Id.* at 396 (quotation marks and citation omitted).

In *The Boeing Co. v. Egyptair*, No. 05-5986-CV, 2007 WL 1315716, at *1 (2d Cir. May 7, 2007), the Second Circuit affirmed a determination that a foreign sovereign's commercial activity excepted it from immunity, where the foreign sovereign named the plaintiff as an additional assured in an insurance policy. The Court held that the declaratory judgment action was "based upon" such commercial activity, finding that the "naming of Boeing as an additional assured is central to its claims for declaratory relief, as Boeing contends that its status as a named insured means that Misr [the foreign sovereign] cannot recover from Boeing the damages it has paid as a result of the crash of Flight 990. There exists, therefore, the requisite significant nexus between Boeing's claims and Misr's commercial activity." *Id.* (quotation marks and citation omitted)).

12

Here, Anderson brings this suit to determine its liability, if any, for the damage to WHOI's submarine caused by the fire on Anderson's vehicle. The damage took place in the United States. The loan agreement – unsigned, undated – requires the Museum to arrange collection of the submarine and to insure it against damage or loss. The Museum is listed as the consignee on the dock receipt. The Museum signed a power of attorney granting Ridgeway, the freight forwarder, the power to contract to have the submarine transported on its behalf, and said power of attorney expressly acknowledged receipt of Ridgeway's terms and conditions of service as governing all transactions between the parties.

But the question remains: is this suit "based upon" any acts by the Museum which are commercial in nature and were "carried on in the United States" or "performed in the United States," as those phrases are used in § 1605(a)(2) of the FSIA? That requirement must be satisfied, if this Court is to have subject matter jurisdiction over the Museum.

The Court is unable to make this determination on the record before it. Clearly, Anderson's liability, or lack thereof, will be determined by an examination of the parties' relationships vis-à-vis the governing insurance policies, contracts, and/or bills of lading. On the existing record, however, there is insufficient information as to where the Museum's pertinent commercial acts were performed, the nature of those acts, and whether this matter is ultimately based on those actions. It is only clear that one commercial activity – the power of attorney – was signed and dated by the Museum, in Australia; but the evidence before the Court is not conclusive as to whether this action falls under clause two, and is based upon an act in the United States performed in connection with the power of attorney.

This is the point raised by Anderson in its motion seeking jurisdictional discovery. Anderson

argues that "because the details of the [loan and transportation] transactions and the documentation underlying them are not available to [Plaintiff], it cannot adequately respond to the Museum's motion [for dismissal]. Nor can the Court rule on the Museum's motion without examining the details of the Museum's transactions with WHOI and Ridgeway." Doc. 39-1 at 5.

"In resisting a motion to dismiss under Rule 12(b)(1), plaintiffs are permitted to present evidence (by affidavit or otherwise) of the facts on which jurisdiction rests. In addition, courts generally require that plaintiffs be given an opportunity to conduct discovery on these jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (quotation marks and citation omitted). "A party seeking jurisdictional discovery, like a party seeking other kinds of discovery, bears the burden of showing necessity." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011), *aff'd*, 713 F.3d 159 (2d Cir. 2013). Generally, a motion for jurisdictional discovery will not be granted if a plaintiff "cannot show that the requested discovery is likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Molchatsky*, 778 F. Supp. 2d at 438 (quotation marks and citation omitted).

However, in the FSIA context, "because sovereign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation, a court must be circumspect in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012) (quotation marks and citation omitted), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014); *see also Funk v. Belneftekhim*, 861 F.3d 354, 367 (2d Cir. 2017) (affirming a district court's decision to permit jurisdictional discovery in FSIA matter where "discovery order was

14

appropriately circumspect in limiting inquiry to the specific facts" that were "crucial to an immunity determination" in that case (internal quotation marks omitted)). Considering whether to permit jurisdictional discovery from a foreign sovereign requires "a delicate balancing between permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (internal quotation marks and citation omitted).

The Court agrees that the discovery requested by Anderson may produce the facts that it needs to withstand the Museum's motion to dismiss, and will be conclusive as to the Museum's assertion of immunity.  Plaintiff has demonstrated a "reasonable basis for assuming jurisdiction," *Seijas v. Republic of Argentina*, 502 F. App'x 19, 21 (2d Cir. 2012) (quotation marks and citation omitted), but without additional discovery, it cannot meet its burden to prove an application of the commercial activity exception by a preponderance of the evidence. The limited discovery Anderson seeks is warranted to resolve the factual dispute on the issue of the Museum's commercial activities, as on the current record, it is unclear whether there is a sufficient nexus between the Museum's commercial acts and the cause of action.[4]

Accordingly, the Court will DENY the Museum's motion for dismissal, without prejudice to renewal, and will GRANT Plaintiff's motion for limited jurisdictional discovery as to the sovereign immunity issue, as discussed below.

---

[4] Plaintiff also seeks jurisdictional discovery to "determine whether the Museum agreed to the application of United States law, which would constitute a waiver of FSIA immunity." Doc. 51 at 8 (footnote omitted). On the present record, there is no evidence that the Museum waived its sovereign immunity; however, Anderson is free to renew this argument should such evidence emerge through discovery.

**B.      Personal Jurisdiction**

The Court turns to the motions of Defendants Ridgeway, WHOI, and Eagle to dismiss the Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction. In support of their respective motions, Defendants argue that the Court cannot exercise personal jurisdiction over them pursuant to Connecticut's long-arm statute, Conn. Gen. Stat. § 33-929(f). Anderson has opposed these motions and has moved for leave to conduct jurisdictional discovery.

A motion to dismiss must be granted if a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citation omitted). That burden "varies with the procedural posture of the case." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 757 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003); *see also Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A prima facie [showing of personal jurisdiction] requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." (citation omitted)).

In deciding a motion to dismiss for lack of personal jurisdiction, the court accepts the plaintiff's allegations of jurisdictional facts and will construe all factual inferences in its favor. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 206 (2d Cir. 2003). The Court is "neither required to draw argumentative inferences in the plaintiff's favor, nor must it accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp.

16

3d 416, 424 (S.D.N.Y. 2018) (quotation marks and citation omitted). Further, "a district court has considerable procedural leeway" and "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 84 (2d Cir. 2013) (quotation marks and citation omitted).

In a diversity or federal question case, personal jurisdiction is determined by the law of the state in which the district court sits. *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). If the exercise of jurisdiction in appropriate under that state's statute, the court must then decide whether such exercise of jurisdiction comports with the requirements of constitutional Fourteenth Amendment due process. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

For a federal court to exercise personal jurisdiction over a defendant, "three requirements must be met." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016), *cert. denied sub nom., Sokolow v. Palestine Liberation Org.*, 138 S. Ct. 1438, 200 L. Ed. 2d 716 (2018). First, "the plaintiff's service of process upon the defendant must have been procedurally proper." *Id.* (quotation marks and citation omitted).  Second, "there must be a statutory basis for personal jurisdiction[.]" *Id*. Third, and finally, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* The due process test has two parts: "the minimum contacts inquiry [which] requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant," and the "reasonableness inquiry [which] requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial

17

justice under the circumstances of the particular case." *Id.* at 331 (quotation marks and citations omitted).

The court recognizes two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Id.* "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks and citation omitted). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quotation marks and citation omitted).

In deciding whether personal jurisdiction exists, the court must first look to the long arm statute of the forum state. "[I]t is the plaintiff's burden to prove that the long-arm statute provides a basis on which [it], and in turn the trial court, may exercise personal jurisdiction over the defendant." *Cogswell v. Am. Transit Ins. Co.*, 282 Conn. 505, 517 (2007). In Connecticut, the applicable statute is § 33-929 of the Connecticut General Statutes, which authorizes jurisdiction over foreign corporations. Here, the parties rely on subsection (f), which provides:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced,

18

manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f). If this long-arm statute reaches Defendants, the Court then must decide whether the exercise of jurisdiction comports with due process.

The Complaint alleges that Anderson is a corporation, "organized and existing in the State of Minnesota with its principal place of business in Minnesota." Doc. 1 ¶ 1. In opposition to Defendants' motions to dismiss, Anderson contends that it has a usual place of business in Connecticut, as required by Connecticut's long-arm statute, and that there is personal jurisdiction over WHOI, Eagle, and Ridgeway pursuant to Conn. Gen. Stat. § 33-929(f)(1), in that the case arises directly out of contracts that "were performed, at least in part, in Connecticut." Doc. 50 at 4. Defendants WHOI, Eagle, and Ridgeway do not challenge the method of service upon them. Rather, they argue that Anderson cannot avail itself of Connecticut's long-arm statute because Anderson is neither a resident of Connecticut nor does it have a usual place of business in this state. Defendants' briefs then argue that even were the Court to find that subsection (f) applies to Anderson, this action does not arise out of any of the scenarios provided for by that section. Finally, Defendants contend that the exercise of jurisdiction in this matter would violate constitutional due process, as the parties lack minimum contacts with Connecticut.

At the outset, the Court must determine whether Anderson, a Minnesota corporation, may avail itself of section 33-929(f). According to the plain language of the statute, as Anderson is not a resident of Connecticut, it must have a "usual place of business" in Connecticut. Conn. Gen. Stat. § 33-929(f). As WHOI, Eagle, and Ridgeway argue, there are no allegations in the Complaint that

19

Anderson has a usual place of business in Connecticut. In opposition to the motions to dismiss, Anderson contends that it has a "place of business" in Connecticut – note the telling omission of the adjective "usual" found in the statute  –  based on the number of shipments its trucks have picked up in Connecticut and the number of miles traveled by its trucks in Connecticut in 2017. Doc. 50 at 3. Anderson also argues that it maintains an agent for service of process in Connecticut, and pays fuel and property taxes that are apportioned to Connecticut pursuant to the International Registration Plan. *Id.*

"Though the Connecticut Supreme Court has not defined 'usual place of business' as used in section 33-929(f), courts have construed it to require less than either incorporation in Connecticut, or that a corporation have its 'principal' or 'only' place of business in Connecticut." *Century Metal Recycling Private Ltd. v. Metal Worldwide, Inc.*, No. 3:11-CV-1072 (JBA), 2012 WL 13013637, at *3 (D. Conn. Aug. 2, 2012) (collecting cases).  In *Matthews v. SBA, Inc.*, 149 Conn. App. 513 (2014), the Connecticut Appellate Court considered whether the plaintiffs, who were Massachusetts residents, were able to use section 33-929(f) to establish jurisdiction over the foreign corporation defendants. In that case, the plaintiffs attempted to establish that they maintained a usual place of business in Connecticut because "(1) they formerly worked for companies that, at the time of the complained of actions, had their primary places of business in Connecticut; (2) the complained of actions occurred in Connecticut; (3) they are members of four Connecticut limited liability companies; and (4) they 'regularly conduct business in Connecticut.'" *Id.* at 556.

The Court rejected each of these bases. First, the Court noted that the operative moment at which the 'usual place of business' requirement must be satisfied is at the time of the filing of the suit; thus the fact that the plaintiffs had a place of business in Connecticut at the time that the

underlying events occurred was irrelevant. *Id.* Second, the Court found that because the statute requires that the plaintiffs fulfill the residency requirement, the fact that "the alleged tortious conduct occurred in this state does not by itself allow the plaintiffs to use § 33–929(f) to subject [the defendants] to our long arm jurisdiction." *Id.* at 557.

After rejecting the third reason proffered by the plaintiffs, irrelevant for our purposes, the Court analyzed the term "usual place of business" to determine whether regularly conducting business in Connecticut could satisfy the residency requirement of section 33-929(f). *Id.* at 559–60. Using the definition from Black's Law Dictionary, the Appellate Court found that a usual place of business is the ordinary or customary location at which one carries on a business. *Id.* "Under this dictionary based definition," the Court found, "it is clear that this state need not be the plaintiffs' primary or sole place of business, but it must, at the very least, be customary or expected that the plaintiffs conduct business here." *Id.* at 560. The Court concluded that the plaintiffs did not satisfy their "burden of demonstrating that either of them have a usual place of business in Connecticut," where the "only specific jurisdictional facts in the record are that the four limited liability companies have business addresses in Lee, Massachusetts, and that the company that employs the plaintiffs, Tower Acquisition, LLC, is a Delaware company with a business address in Massachusetts." *Id.* at 560-61. The Court thus affirmed the trial court's dismissal against those defendants, finding that the plaintiffs did not satisfy the residency requirements of section 33-929(f). *Id.* at 561.

Accordingly, courts in this District addressing this issue have found that a plaintiff's maintenance of a physical site in the state – an address, office, or retail store – where business is conducted is sufficient to find that a plaintiff has a usual place of business in Connecticut for the purposes of section 33-929(f). *See, e.g., Century Metal Recycling Private Ltd.*, 2012 WL 13013637,

at *4 (finding that the plaintiff satisfied the requirements of having a 'usual place of business' in Connecticut for the purposes of § 33-929(f) where the plaintiff established that "all contracts, invoices, and documents pertaining to the parties' relationship were delivered to [the plaintiff's vice president] within the State of Connecticut at [the corporate plaintiff] CMR's address" in Connecticut); *Preferred Display, Inc. v. Vincent Longo, Inc.*, 642 F. Supp. 2d 98, 102 (D. Conn. 2009) ("Because [the plaintiff] PDI is registered to transact business in Connecticut and has one of its two business locations in the state, the court finds that PDI has a 'usual place of business' in Connecticut for the purposes of section 33–929(f)." (citation omitted)); *Nationwide Mut. Life Ins. Co. v. Amphion Media Works, Ltd.*, No. 3:07-CV-947 (WWE), 2008 WL 2572166, at *3 (D. Conn. June 25, 2008) ("[Third-party plaintiff] Best Buy does have a certificate of authority in the state of Connecticut and is, in fact, authorized to conduct business in this state. Therefore, because it alleges that it is a retailer with numerous store locations through the state, Best Buy has a 'usual place of business' in Connecticut and can file suit within the state."). *But see Nedgam Prods., LLC v. Bizparentz Found.*, No. 3:09-CV-500(CFD), 2010 WL 3257909, at *6 (D. Conn. Apr. 29, 2010) (LLC did not have a usual place of business in the state where there were no allegations that it employed individuals at its Connecticut office or that it coordinated or run operations from that location, and no information as to what regular business was conducted from the Connecticut office location).

Here, in contrast, Anderson does not allege that it has a *place* of business in Connecticut, only that it regularly conducts business throughout Connecticut. To support its argument that this is sufficient to avail itself of section 33-929(f), Anderson relies on *Swift Transp. Co. v. RTL Enterprises, LLC*, No. CV156013580S, 2015 WL 9684514, at *1 (Conn. Super. Ct. Dec. 7, 2015),

22

arguing that in that case, the Superior Court found that "a trucking company that had an employee who worked in Connecticut to serve a customer had a usual place of business in the state because it customarily conducted business there." Doc. 50 at 3.

It is not clear to the Court that *Swift* lends the dispositive support Anderson envisions. In *Swift*, the plaintiff had submitted an affidavit from a full-time employee, averring that he worked for the plaintiff as an on-site manager and *was physically located at an office in Plainfield, Connecticut,* along with another employee. *Swift Transp. Co.*, 2015 WL 9684514, at *3. The affidavit stated that the plaintiff "has had a permanent presence in Connecticut for at least the eight (8) years that" the employee had worked for the plaintiff. *Id.* Based on the affidavit, the Superior Court concluded that the plaintiff had satisfied its burden of alleging facts that it had a usual place of business in Connecticut, finding dispositive the fact that the employee had worked full-time for the plaintiff for eight years at an office located in Plainfield, Connecticut. *Id.* at *4.

The same cannot be said for Anderson in this matter. In contrast to the *Swift* plaintiff, Anderson does not allege or aver that it has an office – or even an address – in Connecticut. Instead, the Declaration of Warner Peterson, a Senior Claims Examiner at Anderson, states that in 2017, Anderson's trucks "traveled 423,254 miles in the State of Connecticut, making pickups and deliveries for Anderson's customers located in Connecticut," and in the same year, Anderson "picked up 422 shipments from customer locations in the State of Connecticut." Doc. 50-1 ¶¶ 1-2. Further, as motor carrier that operates in Connecticut, Anderson "is required to and does maintain an agent for service of process" in this state, and a portion of the taxes it pays through the International Registration Plan are apportioned to this state. *Id.* ¶¶ 5-6. These statements make it clear that Anderson's business takes it to and through Connecticut on a regular basis; however, they are insufficient to confer residence

status for the purposes of Connecticut's long-arm statute.

As the *Matthews* Court discussed, Black's Law Dictionary defines "place of business" as a "location at which one carries on a business." *Matthews*, 149 Conn. App. at 560 (quoting *Black's Law Dictionary* (9th ed. 2009)). "Location," in turn, is defined as a "the specific place or position of a person or thing." *Black's Law Dictionary* (9th ed. 2009). Here, Anderson does not allege that it conducts business in Connecticut from any specific place, or location. Anderson does not maintain a business address in Connecticut, nor does it operate out of any particular office in Connecticut. While Anderson's contacts with Connecticut may be sufficient to cause it to be hailed into a Connecticut court as a *defendant* under the long-arm statute, they are insufficient to confer residence status on Anderson as a *party plaintiff* entitled to avail itself of the use of Connecticut's courts under Conn. Gen. Stat. § 33-929(f).

The Court is aware of no case supporting Anderson's contention that a foreign corporation with no "usual *place* of business in this state" can avail itself of section 33-929(f) to establish personal jurisdiction over another foreign corporation. Nor did the Court's research reveal any case in which a plaintiff was deemed to have a "usual place of business" in this state for the purposes of Conn. Gen. Stat. § 33-929(f) without a fixed, physical address in the state from which it conducted business. Moreover, endorsing Plaintiff's theory of jurisdiction would appear to vastly widen the scope of section 33-929(f), a result this Court declines to embrace.

Accordingly, I conclude that as a matter of law, Anderson is not entitled to invoke the Connecticut long-arm statute as a source of personal jurisdiction over Defendants WHOI, Eagle, and Ridgeway. The action will be dismissed against those Defendants. Because those dismissals result from the Court's lack of personal jurisdiction over those parties, the Court does not reach the merits

24

of the underlying claims, and the dismissals will be without prejudice.[5]

Having determined that Anderson has not demonstrated a *prima facie* case for jurisdiction, I will deny Anderson's motion for jurisdictional discovery as to Defendants WHOI, Eagle, and Ridgeway.  *See In re Angeln GmBH & Co. KG*, 510 F. App'x 90, 93 (2d Cir. 2013) ("Declining to permit jurisdictional discovery is well within a district court's discretion if the plaintiff has not made out a prima facie case for jurisdiction." (quotation marks and citation omitted)). Plaintiff has not – and cannot – demonstrate that information it requires to establish personal jurisdiction under Conn. Gen. Stat. § 33-929(f) is  "peculiarly within the knowledge of the opposing party." *Gualandi*, 385 F.3d at 244. As discussed *supra*, a motion for jurisdictional discovery will not be granted if a plaintiff "cannot show that the requested discovery is likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Molchatsky*, 778 F. Supp. 2d at 438 (quotation marks and citation omitted). Here, Defendants would possess no information that would confer Anderson with standing to bring this suit against Defendants pursuant to Conn. Gen. Stat. § 33-929(f). Thus, Anderson's motion for jurisdictional discovery as to Defendants Eagle, WHOI and Ridgeway will be denied.

Accordingly, the Court finds that it lacks personal jurisdiction over Defendants Eagle, WHOI, and Ridgeway, as Anderson has not established that it is a resident of Connecticut or that it has a usual place of business in Connecticut sufficient to avail itself of Conn. Gen. Stat. § 33-929(f). This matter will be dismissed as to those Defendants.

---

[5] Because I find that Anderson cannot avail itself of Conn. Gen. Stat. § 33-929(f) as the means of obtaining personal jurisdiction over Defendants, I do not proceed to the due process analysis. *See Kun Shan Ge Rui Te Tool Co. v. Mayhew Steel Prod., Inc*., 821 F. Supp. 2d 498, 503 n.2 (D. Conn. 2010).

# IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants WHOI and Eagle's *Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment* [Doc. 33], and GRANTS Defendant Ridgeway's *Motion to Dismiss the Complaint* [Doc. 47]. Plaintiff Anderson's complaint for a declaratory judgment is DISMISSED against Defendants Eagle, WHOI, and Ridgeway for lack of personal jurisdiction. Defendant Museum's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* [Doc. 32] is DENIED, without prejudice to renewal. Plaintiff's *Motion for Leave to Conduct Jurisdictional Discovery* [Doc. 39] is GRANTED as to the Museum, and DENIED as to Defendants WHOI, Eagle, and Ridgeway.

Given this conclusion, the Court questions whether this case should proceed, or whether, in the interests of justice, it should be dismissed or transferred given the parallel pending litigation in the District of Massachusetts. Accordingly, on or before **September 24, 2018**, Anderson is directed to file a notice with the Court as to whether it intends to pursue this matter against the Museum in this Court. If it intends to proceed, Anderson should file with said notice a memorandum of law addressing: (1) why this Court should exercise its discretion under the Declaratory Judgment Act to retain jurisdiction of this matter, in light of the present posture of the case, the nature of this lawsuit and the relief sought, the remaining parties, and the pending Massachusetts litigation, *see Sikorsky Aircraft Corp. v. Lloyds TSB Gen. Leasing (No. 20) Ltd.*, 774 F. Supp. 2d 431, 449 (D. Conn. 2011); and (2) whether the "interests of justice" require or permit this Court to transfer the matter to a different district. *See* 28 U.S.C. §§ 1406(a), 1631. If so inclined, the Museum may file a response to Plaintiff's memorandum of law on or before **October 8, 2018**.

The Court STAYS all discovery and deadlines until a determination of these important

26

issues. If this Court ultimately retains jurisdiction over this matter, the Court will set a schedule for

the completion of jurisdictional discovery as to the Museum. Such discovery will be strictly limited

to an inquiry into the specific facts surrounding the activities alleged to be commercial in nature.

It is SO ORDERED.

Dated:     August 23, 2018
           New Haven, Connecticut


                                               */s/ Charles S. Haight, Jr.*
                                               CHARLES S. HAIGHT, JR.
                                               Senior United States District Judge