**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

WOODS HOLE OCEANOGRAPHIC INSTITUTION,

Plaintiff,

v.

ATS SPECIALIZED, INC., EAGLE UNDERWRITING GROUP, INC., RIDGEWAY INTERNATIONAL USA, INC., GUY TOMBS LIMITED, AUSTRALIAN NATIONAL MARITIME MUSEUM, SAM BROUGHTON WRIGHT JUNIOR, SERVICE TIRE TRUCK CENTER, INC., AND TRAVELCENTERS OF AMERICA

Defendants.

CIVIL ACTION NO. 1:17-cv-12301-NMG

**DEFENDANT AUSTRALIAN NATIONAL MARITIME MUSEUM'S REPLY TO OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND SUBJECT MATTER JURISDICTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. WHOI HAS SHOWN NO EXCEPTION TO FSIA IMMUNITY APPLIES .................... 1

A. The Museum Demonstrated that It Is an Instrumentality of Australia ................... 1

B. The Loan of the Submarine Was Educational and Cultural, Not Commercial ............................................................................................................ 2

C. WHOI Has Not Demonstrated Any of the Criteria for § 1605(a)(2) ...................... 4

D. The Implied Waiver Exception Has Not Been Met ................................................ 6

III. THE MUSEUM IS NOT SUBJECT TO PERSONAL JURISDICTION .......................... 7

IV. CONCLUSION ............................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Af-Cap, Inc v. Chevron Overseas (Congo) Ltd.*,
475 F.3d 1080 (9th Cir. 2007) ....................2, 4

*Aschenbrenner v. Conseil Regional de Haute-Normandie*,
851 F.Supp. 580 (S.D.N.Y 1984)....................2, 3

*Atlantic Marine Constr. Co. v. United States Dist. Ct.*,
571 U.S. 49 (2013)....................9

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................8

*Byrd v. Corporacion Forestal y Indus. de Olancho S.A.*,
182 F.3d 380 (5th Cir. 1999) ....................5

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
991 F.2d 1012 (2nd Cir .2013)....................6

*Copia Commc'ns LLC v. AMResorts, L.P.*,
812 F.3d 1 (1st Cir. 2016)....................8

*Drexel Burnham Lambert Grp. Inc. v. Committee of Receivers for Galadari*,
12 F.3d 317 (2d Cir. 1993)....................6

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*,
703 F.3d 742 (5th Cir. 2012) ....................8

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983)....................8

*Foster-Miller, Inc. v. Babcock & Wilcox Canada*,
46 F.3d 138 (1st Cir. 1995)....................9

*Goodyear v. Dunlop Tires Operations, Inc. v. Brown*,
131 S.Ct. 2846 (2011)....................8

*OBB Personenverkehr AG v. Sachs*,
136 S.Ct. 390 (2015)....................4

*Paterson, Zochonis (U.K.), Ltd. v. Compania United Arrow, S.A.*,
493 F.Supp. 621 (S.D.N.Y. 1980)....................7

*Republic of Argentina v. Weltover, Inc.*,
504 U.S. 607 (1992)....................5

*Santos v. Compagnie Nationale Air France*,
934 F.2d 890 (7th Cir, 1991)....................5

*Sawtelle v. Farrell*,
70 F.3d 1381 (1st Cir. 1995)....................8

*Shapiro v. Republic of Bolivia*,
930 F.2d 1013 (2d. Cir. 1991)....................6

*Smith v. Socialist People's Libyan Arab Jamahiriya*,
101 F.3d 239 (2d Cir. 1996)....................6

*Terenkian v. Republic of Iraq*,
694 F.3d. 1122 (9th Cir. 2012)....................4, 5

*Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests In Int'l & Foreign Courts*,
727 F.3d 10 (1st Cir. 2013)....................2, 4, 5

*Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*,
898 F.Supp.2d 301 (D. Mass. 2012)....................7

*Weinberg v. Grand Circle Travel, LLC*,
891 F.Supp.2d 228 (D. Mass. 2012)....................9

*Zedan v. Kingdom of Saudi Arabia*,
849 F.2d 1511 (D.C. Cir. 1988)....................4, 5

**Statutes**

United States Code
Title 28 §1330 et seq. (Foreign Sovereign Immunities Act ("FSIA"))....................*passim*
§ 1602(a)....................5
§ 1603....................1
§ 1605(a)(1)....................6
§ 1605(a)(2)....................2, 4, 5

## I.      INTRODUCTION

Although WHOI concedes that it has the initial burden to show by a preponderance of the evidence that an exception to foreign sovereign immunity applies (Dkt. 63 at 2), its opposition does not establish that any of the exceptions to the strong presumption of immunity under the Foreign Sovereign Immunities Act (the "FSIA"), available to agents and instrumentalities of a foreign sovereign, apply.[1]  Nor does WHOI successfully rebut the fact that the Museum is not subject to personal jurisdiction in Massachusetts.  And WHOI does not even bother to *try* to distinguish seminal cases relied upon by the Museum; instead it entirely ignores dispositive issues while raising irrelevant facts about the Museum's supposedly large budget (a hardly surprising fact, given that the Museum is an *entire nation's* maritime museum).  See Dkt. 63 at 2.

## II.     WHOI HAS SHOWN NO EXCEPTION TO FSIA IMMUNITY APPLIES

### A.     The Museum Demonstrated that It Is an Instrumentality of Australia

Near the end of its opposition, which it is crucial to address first, WHOI raises the strange notion that the Museum somehow did not meet its burden to show that it is an instrumentality of the Commonwealth of Australia.  As relevant here, an agency or instrumentality is defined as "(1) a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof; and (3) which is neither a citizen of a State of the [U.S.]…, nor created under the laws of any third country."  § 1603.  Peter Rout's undisputed declaration submitted in support of the Museum's motion demonstrates that the Museum was established by the Australian Parliament as a corporation, and all of its shares are owned by the Australian government.  (Dkt. 51-1, Rout Decl., ¶ 3.)  All requirements of the Museum's status as an agent or instrumentality are met; no credible contrary evidence or

---

[1] All defined terms are used as in the Museum's opening brief.  All statutory references are to the FSIA.

argument was submitted. WHOI's contrary and strange assertion is simply wrong.

**B. The Loan of the Submarine Was Educational and Cultural, Not Commercial**

Under the commercial activity exception, FSIA immunity is withdrawn in any case "in which the action is based upon a commercial activity carried on in the U.S. by the foreign state [clause 1]; or upon an act performed in the U.S. in connection with a commercial activity of the foreign state elsewhere [clause 2]; or upon an act outside the territory of the U.S. in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the [U.S.] [clause 3]." § 1605(a)(2); *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests In Int'l & Foreign Courts*, 727 F.3d 10, 24 (1st Cir. 2013) ("*Universal Trading*"). This exception should always be interpreted narrowly. See *Af-Cap, Inc v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1087 (9th Cir. 2007).

Bearing in mind that this exception must be construed narrowly, on the issue of whether the activities at issue are even "commercial" in the first instance, it is telling that WHOI failed to even mention the most analogous case cited by the Museum in its motion, which involved a piece of art that was damaged in transit. *See, Aschenbrenner v. Conseil Regional de Haute-Normandie*, 851 F.Supp. 580 (S.D.N.Y 1984). In that case, the plaintiff, a private New York citizen, lent artwork items to an instrumentality of the French Republic. *Id.* at 582. When they were returned after exposition in France, they had been damaged. The Court found that the French instrumentalities were immune from suit under FSIA and that the commercial exception did not apply. *Id.* at 585-86. Even though certain aspects of the exposition were somewhat commercial, such as a "nominal admission fee," the Court found that "taken as a whole," the activities of the instrumentality were "essentially educational and cultural," and that the exposition of the artwork was "more closely analogous to a publicly-sponsored, not-for-profit art exhibition than to a private, for-profit gallery show or auction." *Id.* at 585. Notably, the

*Aschenbrenner* court stated that the lack of a profit motive did not enter into its analysis: "It bears emphasis that my conclusion that the Exposition was not a commercial activity does not rest on the organizers' lack of a profit motive. [The FSIA forecloses such reasoning.] Rather, my conclusion rests on the dissimilarity between how the Exposition was organized and presented… and how a typical profit-seeking project is organized and presented." *Id.* The court continued by recognizing that although the difference between a profit motive and resemblance to profit-seeking activities might seem "abstruse", the distinction was important because a commercial activity must be one "of the type an individual would ***customarily*** carry on for profit." *Id.* (emphasis added).

The exact same analysis applies here. Just as "taken as a whole," the expositions here and in *Aschenbrenner* were cultural and educational exchanges which resulted in damages to the artwork during transit, and despite nominal admission fees to see the artwork, WHOI's attempt to turn its cultural, educational exchange with the Museum into a commercial enterprise simply holds no water. (As stated in the opening papers, the supposed multi-year "lease" fee amounted to less than what it would cost to rent a small car. (Dkt. 51 at 4, n. 3 and supporting citations.)[2] This government "lease" was not one which any individual could or would customarily carry on.

Despite being confronted with a case with facts as similar to this one as *Aschenbrenner*, WHOI does nothing to try to convince the Court that the analysis in that case was somehow mistaken. WHOI does not do so because it cannot do so. From whatever angle this transaction is viewed, it was a non-commercial cultural exchange of a deep-sea diving vessel which was devised so that, after citizens of or visitors to Massachusetts had viewed the vessel, citizens of Australia could have the same benefit. To hold that borrowing the submarine for display in a

[2] Since the nature of the lawsuit in Connecticut (a declaratory judgment action filed by the trucking company whose truck caught fire and damaged the submarine) was very different from the claims brought by WHOI here, the *Aschenbrenner* case was not cited in the Connecticut action, but it is obviously important to the analysis here.

national museum was "commercial" would have a chilling effect on such cultural, non-commercial exchanges in the future because no sovereign would be able to borrow or display anything from the U.S. as a means to inform and educate its citizens without fear that it would be subject to suit in the U.S.

**C. WHOI Has Not Demonstrated Any of the Criteria for § 1605(a)(2)**

Although the "gravamen of the suit" or the core thereof is the relevant inquiry (*OBB Personenverkehr AG v. Sachs*, 136 S.Ct. 390, 396 (2015)) for determining whether an exception applies, WHOI fails to even identify the gravamen of the suit against ANMM. Is it a breach of contract, or bailment by ANMM, agreed to in Australia, or in the U.S.? WHOI does not say.

WHOI seems to argue, vaguely, that all three clauses of the commercial exception of § 1605(a)(2) are satisfied here. Keeping in mind that courts must construe the waiver provisions in the FSIA narrowly (see *Af-Cap Inc.*, 475 F.3d 1080, 1087), clearly none of these requirements have been met here. In analyzing the commercial activity exception, courts have required "some form of nexus" between the sovereign's activity and the U.S. *Universal Trading, supra*, 727 F.3d at 25 (interpreting § 1605(a)(2)). Each clause of the commercial activity exception requires a different nexus. *See Terenkian v. Republic of Iraq*, 694 F.3d. 1122, 1128-29 (9th Cir. 2012) ("*Terenkian*").

WHOI is not even clear as to which clause of § 1605(a)(2) it relies upon – it just lumps all of ANMM's supposed activities into one list and leaves it to the Court to figure out. See Dkt. 63 at 10-11. But what clauses of § 1605(a)(2) are invoked (if any) is important to answer before the powerful presumption of immunity can be cast aside. For example, WHOI relies upon the supposedly years-long process of negotiating the agreement, but preliminary negotiations and mere precursors are irrelevant and are not enough to confer jurisdiction under the first clause of

§1605(a)(2). *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1513 (D.C. Cir. 1988).[3] And the second clause of § 1602(a) does not apply to "contracts entered into" in another country. *Id.* at 1514. Yet, WHOI admits that ANMM made the agreement **in Australia** and then "mailed it to Massachusetts." Dkt. 63 at 3. See also Rout Decl. ¶ 7, stating that the agreement was "signed in Sydney, Australia."[4]

And the third clause of § 1605(a)(2) applies "where an act occurs outside the [U.S.] and causes a direct effect in the [U.S.]" See *Zedan*, 849 F.2d at 1514. But WHOI seems to forget both (1) that the effect must be foreseeable and (2) that any break in the causal link means that no "direct effect" exists. See *id.* ("[F]inancial hardship fortuitously suffered in the [U.S.] is not a direct effect of Saudi Arabia's failure to honor a contract in Saudi Arabia.").[5] The Museum's activities did not directly lead to a fire on the truck transporting the vessel. The facts here demonstrate the classic situation where an "intervention of another object, cause, or agency… depending on variables independent of the conduct of the foreign state" provided a break in causation. *Terenkian*, 694 F.3d at 1133-34. The Museum certainly could not have foreseen that the truck transporting the submarine would have failed brakes and would catch fire. In short, WHOI has not met its burden to show that any of the three clauses of § 1605(a)(2) apply.

---

[3] None of the cases WHOI appears to cite with respect to the first clause, if that was its intention, assist it. See Dkt. 63 at 11. For example, *Universal Trading*, 727 F.3d at 25-26, involved a unilateral contract (not at issue here) for asset recovery work. It bears no resemblance to the facts here. In *Santos v. Compagnie Nationale Air France*, 934 F.2d 890, 894 (7th Cir, 1991), and, in *Terenkian*, 694 F.3d at 1137, the Court found that there was no jurisdiction under FSIA.

[4] WHOI does not appear to even address the second prong under § 1605(a)(2); however, this clause is generally understood to apply to non-commercial acts in the U.S. that relate to commercial activities abroad, which are not involved here. *Byrd v. Corporacion Forestal y Indus. de Olancho S.A.*, 182 F.3d 380, 390 (5th Cir. 1999) ("*Byrd*") (abrogated on other grounds as stated in *Samantar v. Yousuf*, 560 U.S. 305, 310, n.4).

[5] The other cases cited by WHOI are easily distinguishable and do not support application of this clause. (Dkt. 63 at 12.) In *Universal Trading*, the First Circuit recognized that the loss has to be an "immediate consequence" of the Museum's act. 727 F.3d at 26, citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992). And in *Byrd*, the court was presented with allegations that the sovereign foresaw and perhaps even planned the financial harm. 182 F.3d at 391 (abrogated on other grounds as stated above). Application of this clause would also entirely ignore the forum selection clause negotiated and agreed by the parties for all disputes to be resolved in the United Kingdom.

**D. The Implied Waiver Exception Has Not Been Met**

In asserting the implied waiver exception, WHOI misconstrues the law and ignores the most important points raised by the Museum. But one more crucial point should also be stated: the Museum argued that the mere agreement that Massachusetts law would apply to arbitration in the *United Kingdom* could not constitute the kind of clear and unambiguous waiver required. Yet, WHOI failed to point to a *single case* in which an exception to immunity applied when the foreign entity made very clear its intention **not to litigate in the U.S**. even though the substantive law of a particular state would apply. That failure is telling – because it means that no credible argument exists that the Museum waived its right to assert immunity from suit in the U.S. Indeed, "most courts have refused to find an implicit waiver of immunity to suit in American courts from a contract clause providing for arbitration in a country other than the [U.S.]." *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2nd Cir .2013).

And although WHOI asserts that if a foreign sovereign has agreed to arbitrate in another country "and agreed that the law of another country should govern the contract," then waiver should be found under this section of the FSIA (Dkt. 63 at 12), what WHOI omitted is the fact that the case law it relies upon for this argument *refused* to find an implied waiver. The holding was independent of this issue. In contrast to WHOI's expansive view of implied waiver, "[f]ederal courts have been virtually unanimous in holding that the implied waiver provision of Section 1605(a)(1) must be construed narrowly." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d. Cir. 1991).

Further, any implied waiver must be "unmistakable" and "unambiguous" (*Drexel Burnham Lambert Grp. Inc. v. Committee of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir. 1993); *see also, Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir. 1996). WHOI entirely ignores the fact that the agreement between WHOI and the Museum for

the loan of the vessel shows unmistakably that both WHOI and the Museum *wanted to avoid litigation in the U.S.* As pointed out by the Museum (but ignored by WHOI), the original agreement provided for litigation in Australia. Rout Decl. at ¶ 24, Ex. A, ¶ 16.1-16.4. The Variation Schedule changed location – not to the U.S., *but to the United Kingdom. Id.* at ¶ 16.4. This language shows not an unambiguous and clear waiver to be sued in the U.S., but a clear and unambiguous *nonwaiver* of the Museum's inherent right under FSIA to avoid U.S. courts.

Finally, and although WHOI points to a document between Ridgeway and the Museum as some form of waiver, WHOI is not a party to that agreement, and therefore has no basis to raise its terms. More importantly, WHOI completely ignored the case of *Paterson, Zochonis (U.K.), Ltd. v. Compania United Arrow, S.A.*, 493 F.Supp. 621, 623-24 (S.D.N.Y. 1980), which held that signing a required export Power of Attorney (as here) simply to clear customs does not constitute a waiver of sovereign immunity. This Court has held likewise. See *Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts*, 898 F.Supp.2d 301, 311 (D. Mass. 2012) (rejecting argument that signing power of attorney impliedly waived immunity.) There has been no waiver of the FSIA's grant of immunity to the Museum.

## III. THE MUSEUM IS NOT SUBJECT TO PERSONAL JURISDICTION

The choice of forum provided in the Variation Agreement dovetails into the issue of personal jurisdiction as well. Unlike the sovereign (Australia) itself, the Museum as its agency is perfectly free to raise due process personal jurisdictional arguments because an agency is considered a person under the Constitution's due process clause.[6] WHOI does not argue that the Museum is subject to general, but only specific jurisdiction, and therefore, that general jurisdiction does not exist over the Australian museum is conceded.

[6] Although Judge Haight dropped a footnote in his opinion in the Connecticut case (involving some aspects of the same incident) that suggested that the Museum could not bring a personal jurisdictional argument, that was dicta; the jurisdiction issue was not before him, and he did not have the benefit of any briefing on this point, which is crucial.

As set forth in the Museum's motion, the jurisprudence makes clear that the Museum is free to argue this Court's lack of personal jurisdiction over it. Circuit courts considering the matter have come to the conclusion that while a country (here, Australia) has no due process personal jurisdictional arguments, agencies and instrumentalities, such as the Museum, do, based on decades-long Supreme Court precedent. See, e.g., *First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd*., 703 F.3d 742, 756 (5th Cir. 2012); see also *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983); *Goodyear v. Dunlop Tires Operations, Inc. v. Brown*, 131 S.Ct. 2846 (2011). WHOI has not argued that the Museum is an alter ego of Australia itself or raised any other argument denying the Museum's right to bring jurisdictional arguments to this Court. In any event, despite WHOI's attempt to portray this one simple loan agreement as a massive years-long ordeal, it was merely a one-time, non-commercial exchange of a single cultural artifact. As stated by the Supreme Court decades ago in *Burger King Corp. v. Rudzewicz*, "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests." 471 U.S. 462, 478-79 (1985). WHOI does not contest the fact that the incident giving rise to this litigation occurred in Connecticut, not Massachusetts, involving the intervening cause of a third party's truck catching fire, which means that the relatedness prong of specific jurisdiction has not been met. *See*, *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995).

For the purposeful availment prong, courts should focus on the "voluntariness of the defendants' relevant Massachusetts contacts and the *foreseeability of the defendants falling subject to Massachusetts's jurisdiction*." *Copia Commc'ns LLC v. AM Resorts, L.P.*, 812 F.3d 1,

5 (1st Cir. 2016) (emphasis added). "The focus of the analysis is on whether a defendant has 'engaged in any purposeful activity related to the forum that *would make the exercise of jurisdiction fair, just or reasonable*.'" *Weinberg v. Grand Circle Travel, LLC*, 891 F.Supp.2d 228, 245-46 (D. Mass. 2012) (emphasis added).

How, from the Museum's perspective, was it foreseeable and fair that it would have to litigate in Massachusetts when it did everything possible, as mentioned above, *not to ever litigate* in the U.S.? See Dkt. 51-1, Rout Decl., ¶ 24, Ex. A, ¶ 16.1-16.4. As recently stated by the Supreme Court in a forum clause selection case,

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain.

*Atlantic Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 66 (2013).

From a jurisdictional, due process approach, how is it fair, just or reasonable to subject the Museum to specific jurisdiction when it (and WHOI) did everything by contract to avoid it? *Weinberg*, 891 F.Supp.2d at 245-46. Finally, regarding the gestalt factors for specific jurisdiction discussed in the Museum's opening brief, the primary function of weighing these factors is to put into "sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 150 (1st Cir. 1995). WHOI does not answer how it is fair or reasonable to require the Museum to litigate here when it did everything it could to avoid that – nor does WHOI ever explain how inhibiting the exchange of cultural items is in the interest of either the parties, the nations involved, or their citizens. The Museum's being held subject to jurisdiction in Massachusetts would be fundamentally unfair, damaging to the foreign relations of the U.S., and simply bad for everyone

involved.[7]

## IV. CONCLUSION

The only points contested by WHOI in its opposition to the Museum's motion to dismiss show that the commercial and implied waiver exceptions to sovereign immunity under the FSIA do not apply, and that the assertion of specific jurisdiction over the Museum in Massachusetts would be violative of the Museum's due process rights. It is respectfully requested that the Museum's motion be granted.

Respectfully submitted,

DEFENDANT AUSTRALIAN NATIONAL MARITIME MUSEUM
By: Its Attorneys

*/s/ Chad M. Vacarella*

Chad M. Vacarella, BBO #637394
cvacarella@hinshawlaw.com
HINSHAW & CULBERTSON LLP
53 State Street, 27th Floor
Boston, MA 02109
Telephone: 617-213-7013
Facsimile: 617-213-7001

Dated: October 1, 2018

[7] The Museum objects, pursuant to the Federal Rules of Evidence, to the evidence submitted by WHOI as follows: (A) C. Land Decl: ¶¶ 3-4, 6-7, 9-10, 13-16, 17-30, 31-43, 46-77 (calls for a legal conclusion which is not the province of the declarant, lack of personal knowledge/foundation, hearsay); (B) R.S.C. Munnier Decl.: ¶¶ 3-4, 6-7, 9-10, 13-16, 17-30, 31-43, 47-77 (calls for a legal conclusion which is not the province of the declarant, lack of personal knowledge/foundation, hearsay); (C) Decl. of A. Tarantino: ¶¶ 3-4, 6-7, 9-10, 13-16, 17-30, 31-43, 46-75 (calls for a legal conclusion which is not the province of the declarant, lack of personal knowledge/ foundation, hearsay). The Museum reserves the right to make further objections if necessary or applicable at any future hearing.

**CERTIFICATE OF SERVICE**

I certify that on October 1, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Chad M. Vacarella*
Chad M. Vacarella