**United States District Court**

**District of Massachusetts**

| | |
|---|---|
| _____ ) | |
| **Woods Hole Oceanographic** ) | |
| **Institution,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **17-12301-NMG** |
| **ATS Specialized, Inc., et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the substantial damage done to an experimental, deep sea submarine ("the sub") during its ill-fated shipment from Woods Hole, Massachusetts to Australia. It didn't get very far.

In or about May, 2017, plaintiff Woods Hole Oceanographic Institution ("WHOI" or "plaintiff"), the owner of the sub, executed a settlement agreement with Eagle Underwriting Group, Inc. ("Eagle") and its underwriters ("the Underwriters") whereby those parties agreed to pay WHOI $3.9 million and Woods Hole agreed to assign to them any claims arising out of the damage to the extent of that payment. Thereafter, Woods Hole brought several claims sounding in contract and tort against the

-1-

multiple defendants allegedly involved in the transportation of the sub.

Pending before the Court are an array of motions for summary judgment and other pleadings filed by the parties.

I.  **Background**

   **A. The Facts**

The facts of this case have been broadly recited in prior Memoranda and Orders of this Court and Reports and Recommendations of Magistrate Judge Jennifer C. Boal, see, e.g., Docket Nos. 91, 238, 239, 420, 444 and 674, but relevant here is the following:

In or before 2015, WHOI and the Australian National Maritime Museum ("the Museum") executed an agreement ("the Loan Agreement") whereby WHOI was to loan its submarine, the Deepsea Challenger (again, "the sub"), to the Museum for two years.  The agreement provided that the Museum was responsible for, inter alia, arranging a multimodal transportation of the vessel between Massachusetts and Australia and insuring it during that transport for $5 million, the amount disclosed in the Loan Agreement as the value of the sub.  The parties also agreed to indemnify each other against all "actions, claims, suits, demands, liabilities, losses, damages and costs" relating to the Loan Agreement.

To perform its obligations under the Loan Agreement, the Museum retained Ridgeway International Australia Limited ("Ridgeway Australia") to organize the transportation and obtain insurance coverage for the trip.  Ridgeway Australia, in turn, engaged Ridgeway International USA, Inc. ("Ridgeway USA") to coordinate and oversee both and the Museum subsequently provided Ridgeway USA a power of attorney ("the POA") to perform those duties on the Museum's behalf.  The Museum also received a donation from Wallenius Wilhelmsen Logistics ("Wallenius"), an ocean carrier, to cover the ocean portion of the shipment.

With respect to the inland portion of the shipment, Ridgeway USA contracted with ATS Specialized ("ATS") to carry the sub via tractor-trailer ("the Trailer") from Woods Hole, Massachusetts to the Port of Baltimore, Maryland, where it was to be loaded onto the Wallenius vessel and shipped to Australia. Ridgeway USA also arranged for Guy Tombs Ltd. ("GTL") to secure $5 million of cargo insurance to cover shipment of the sub from start to finish.  GTL obtained a $6.5 million Single Shipment Policy ("the Policy") from the Underwriters which represents a $1.5 million increase over the coverage requested and over the value of the sub as disclosed in the Loan Agreement.  The Policy named GTL as an insured, WHOI as the loss payee and the Museum as the consignee of the sub.

On July 7, 2015, approximately two weeks prior to the shipment, an ATS driver took the subject Trailer to TravelCenters of America ("TCA") in Whitestown, Indiana, complaining of an air leak.  There, a TCA service technician performed an annual Department of Transportation ("DOT") inspection, repaired the slack adjusters on the Trailer's rear axle and attempted to address the driver's complaint of an air leak.  The service technician examined the Trailer's brakes and other components and, although he failed to identify the air leak, he ultimately verified that each component of the Trailer met the requirements necessary to pass the DOT inspection. Accordingly, the Trailer was deemed safe and appropriate for transporting cargo.

On or about July 22, 2015, ATS took possession of the sub, loaded it onto the Trailer and began the trip to Baltimore. Approximately one hour into the trip, the Trailer experienced a single tire blow-out in its front axle.  Terminated defendant Service Tire Truck Center ("STTC") was called to service the flat tire and sent one of its tire technicians to do the job. When the tire technician arrived at the Trailer, he removed the front left tires, cleaned and inspected the exterior of the front-axle brake drum for clogs and cracks per usual and affixed the replacement tire.  A few hours later, the Trailer was parked overnight at another TCA facility in Rhode Island.  Just after

its departure the next day, however, the left rear wheel well of the Trailer caught fire.  The fire spread to the sub and caused substantial damage to it.

The parties have disclosed multiple experts to opine on the origin and cause of the fire.  All parties acknowledge that the fire was caused by some component of the subject Trailer's brake system and many attribute it to a small air leak at or near the left brake chamber of the Trailer's rear axle.  The experts dispute, however, which specific mechanism ultimately caused the conflagration.

### B. The Procedural History

Following the fire, WHOI made a claim under the Policy and sent notice of such to Ridgeway USA and ATS.  On or about May 3, 2017, WHOI entered into a Settlement Agreement with Eagle and the Underwriters as described above.[1]  None of the defendants was included in the settlement discussions nor in the ultimate agreement.

Pursuant to the Settlement Agreement, WHOI assigned all subrogated rights to Eagle and the Underwriters to the extent of the payments made by them.  The agreement also acknowledged that WHOI may have losses not covered by the Policy and damages in

_____

[1] The Underwriters are 1) Certain Underwriters at Lloyds under UMR: B0878AAA157172, 2) HDI-Gerling Industrial Insurance Company, Canada Branch, 3) St. Paul Fire and Marine Insurance Company and 4) Economical Insurance Group.

excess of $3.9 million.  It, thus, permitted WHOI to pursue
claims for its uninsured losses "as it sees fit".

Two weeks later, Anderson Trucking Service, Inc.
("Anderson"), a company affiliated with ATS, filed a complaint
for declaratory judgment in the United States District Court for
the District of Connecticut. See Anderson Trucking Servs., Inc.
v. Eagle Underwriting Group, Inc., et al., No. 3:17-cv-000817
(D. Conn.).  Anderson named WHOI, the Museum, Ridgeway USA and
Eagle as defendants, seeking a declaration that 1) it is not
liable for any damage incurred by the sub or, in the
alternative, 2) any liability shall be limited.  That case was
dismissed without prejudice as to most defendants in August,
2018, for lack of personal jurisdiction and voluntarily
dismissed as to the remaining defendants in December, 2020.

In the meantime, in November, 2017, Woods Hole brought this
action on its own behalf and as agent, trustee, assignee and/or
subrogee of all other interested parties who were damaged as a
result of the loss.  Woods Hole sued ATS, the Museum, Ridgeway
USA, TCA and other defendants for, inter alia, breach of
contract, breach of bailment obligations, negligence and
liability under the Carmack Amendment, 49 U.S.C. § 14706.  Over
the course of more than four years, multiple answers, counter-
claims, cross-claims, third-party claims and motions have also
been filed in this case.  Several defendants have been dismissed

-6-

and, in general, all remaining parties deny liability for the damage and posit numerous affirmative defenses.

In August, 2021, this Court issued a memorandum and order ("M&O") addressing a proliferation of motions filed by the parties. See Woods Hole Oceanographic Inst. v. ATS Specialized, Inc., No. 17-12301, 2021 U.S. Dist. LEXIS 158516 (D. Mass. Aug. 20, 2021).  The Court held, inter alia, that 1) WHOI was estopped from arguing that the sub was worth more than $5 million, 2) ATS was liable under the Carmack Amendment but disputed material facts prevented a determination of the amount of damages, 3) disputed material facts likewise precluded a determination with respect to whether TCA was negligent, 4) the Museum was not entitled to indemnity from TCA and 5) questions of fact prevented a determination of whether Ridgeway USA and/or the Museum were insureds under the Policy. See id.

The Court held the remaining motions, also numerous, under advisement and turns to them now.

## II.  Motions for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving

party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

## B. Application

### 1. Eagle

Eagle has moved for summary judgment in its favor with respect to all claims and cross-claims asserted against it by Ridgeway USA and the Museum.[2]  The Underwriters have joined those motions but, for reasons discussed at greater length below, the Court will address them separately.

Ridgeway USA asserts three claims against Eagle for 1) coverage under the Policy, 2) indemnity pursuant to the same and 3) violation of M.G.L. c. 93A.  The Museum asserts claims for 1) violation of M.G.L. c. 93A and 2) declaratory judgment with respect to the Policy.

This Court has previously held that factual disputes prevent determination as to whether Ridgeway USA or the Museum was an insured under the Policy. <u>See</u> <u>Woods Hole</u>, 2021 U.S. Dist. LEXIS 158516 at *46.  Eagle insists, however, that the claims are unavailing regardless because it is not an insurer under the Policy, the claims for coverage and indemnity are time-barred and, for various reasons, the state law claims cannot be maintained.

---

[2] Ridgeway USA and the Museum have moved to strike Eagle's motion as untimely filed, but that motion will be denied because Eagle's motions were counter-summary judgment motions filed in accordance with the deadlines set by the Court.

### a. The Policy claims

Eagle contends that it cannot be held liable under the Policy because it not an insurer but rather a "Managing General Agent" appointed by the Underwriters to negotiate the insurance contract on their behalf. Ridgeway USA and the Museum disagree. They submit that the Policy and the Settlement Agreement both describe Eagle as an insurer and, moreover, that the Settlement affords Eagle a stake in any potential recovery by WHOI.

 The Policy establishes beyond dispute that Eagle was an agent of the Underwriters and not itself an insurer. Its declarations designate the four Underwriters, but not Eagle, as the "Insurer". The "Insured Clause" states that Eagle "does insure on behalf of and as Agents for" the Underwriters, and the "Insurer Clause" provides that the Policy "is insured with the Company(ies) as per the Declaration Page", i.e. with the Underwriters. The Museum contends that the singular "insurer", employed occasionally in the Policy, refers to Eagle but that interpretation is untenable because the Policy designates the "insurer" as the Underwriters. Even if the use of the singluar "insurer" is confusing, it cannot refer to Eagle which is the only entity designated as an agent.

Although the Settlement Agreement is ambiguous, it is not dispositive of the issue. The agreement defines Eagle and the Underwriters collectively as "the Insurance Companies" and

provides, <u>inter alia</u>, that WHOI is to be paid $3.9 million by "the Insurance Companies" which are to be its assignees or subrogees.  The parties dispute the extent of Eagle's rights under the Settlement Agreement but that is irrelevant to whether Eagle is an insurer under the Policy.

Because Eagle is not an insurer under the Policy, Ridgeway USA cannot obtain coverage from or be indemnified by it. <u>See</u> <u>Garcia</u> v. <u>United of Omaha Life Ins. Co.</u>, No. 20-00043, U.S. Dist. LEXIS  121575 at *5-6 (D.R.I. July 10, 2020) (holding that agent is not bound on contract entered on behalf of disclosed principal), <u>see</u> Restat. (Second) of Agency, § 328 (explaining same).  Similarly, the Museum cannot maintain its claim for a declaratory judgment against Eagle because Eagle, as the agent of the Underwriters, possesses no rights or obligations under the Policy.

### b. The state law claims

Ridgeway USA and the Museum each allege that Eagle violated M.G.L. c. 93A by virtue of its settlement of the claim with WHOI and its actions thereafter.  Eagle responds that it is not liable under the statute because 1) as detailed above, it does not afford coverage to either Ridgeway USA or the Museum and 2) English law governs the Policy and therefore the Chapter 93A claims are for naught.  The Court considers those arguments in turn.

Eagle insists that Ridgeway USA and the Museum cannot maintain state law claims against it because it is not an insurer.  That argument is misplaced.  Ridgeway USA and the Museum assert that their Chapter 93A claims derive from violations of M.G.L. c. 176D, the Massachusetts statute which prohibits, <u>inter alia</u>, insurers from engaging in unfair claim settlement practices.  <u>See</u> M.G.L. c. 176D.  Chapter 176D "creates an action independent from the [insurance] contract". <u>Ora Catering, Inc.</u> v. <u>Northland Ins. Co.</u>, 57 F. Supp. 3d. 102, 109 (D. Mass. 2014) (citations omitted), M.G.L. c. 176D, § 3(9) (listing examples).  Claim settlement in contravention of Chapter 176D may, in turn, be a violation of Chapter 93A. <u>See</u> M.G.L. c. 93A, § 9(1), <u>Ora Catering</u>, 57 F. Supp. 3d at 110.

Here, Eagle took part in the settlement of the claim with WHOI, as demonstrated by the Settlement Agreement which bears the signature of its Vice President of Claims and Risk Management.  Chapter 176D prohibits "persons", defined as including agents, from engaging in a litany of unfair trade practices. M.G.L. c. 176D, §§ 1-3.  Although neither party has cited relevant case law, in light of the broad statutory language, the Court concludes that Eagle's status as an agent does not foreclose the Chapter 93A claims asserted by Ridgeway USA and the Museum.

Eagle also declares that Chapter 93A claims are precluded because they derive from alleged breaches of the Policy which is governed by English law. See Woods Hole, 2021 U.S. Dist. LEXIS 158516 at *44 (holding that English law applies to the Policy). That argument, too, is unavailing.  The Museum and Ridgeway USA may bring claims under Massachusetts law for violation of Chapter 93A even where other claims in the case are governed by the law of a different jurisdiction, here the United Kingdom. See Value Partners S.A. v. Bain & Co., 245 F. Supp. 2d 269, 274 (D. Mass. 2003).

### 2. The Underwriters

Ridgeway USA has moved for summary judgment against the Underwriters, requesting, as it does against Eagle, that the Court enter judgment in its favor on its claims for 1) coverage under the Policy, 2) indemnity pursuant to the same and 3) violation of M.G.L. c. 93A.  The Underwriters propound defenses substantially similar to those of Eagle (although they concede that they are insurers under the Policy) and, for the reasons stated as to Eagle, Ridgeway USA may maintain its state law claims against the Underwriters.

The Underwriters interpose, however, an additional objection with respect to the coverage and indemnity claims, namely that those claims are time barred by Clause 26 of the Policy ("the Suit or Action Clause").  Clause 26 provides that

-13-

[t]here shall be no suit or action against this Insurer for the recovery of any claim by virtue of this policy being sustained in any Court of Law or Equity unless commenced within one year from the time the loss occurred.

The Underwriters assert that the "loss" for the purpose of the Clause was the damage to the sub which occurred in July, 2015.  Because Ridgeway USA filed its third-party complaint against the Underwriters in April, 2019, more than three years after the purported date of the loss, the Underwriters submit that the claim is time barred.

Ridgeway USA replies with several arguments, including that the Suit or Action Clause does not bar it from asserting any defenses that it may have against the Underwriters which includes seeking indemnity.  It offers the testimony of its expert in English Insurance law, Peter MacDonald Eggers ("Eggers"), who advises that a suit or action provision such as Clause 26 does not foreclose a defensive indemnity claim.  The Court agrees.  Upon consideration of the proffered opinion and the Policy, the Court agrees that Ridgeway USA is not barred by the Suit or Action Clause from seeking indemnity in defense of claims brought by Eagle, the Underwriters or WHOI.

Finally, both Eagle and the Underwriters have moved to sever and stay the Chapter 93A claims pending resolution of various tort, contract and statutory claims asserted by the numerous parties to this action.  The Court will not sever or stay those claims because doing so would inhibit the expeditious

-14-

resolution of this nearly five-year-old case and because the Court discerns no meaningful risk of prejudice to any party in proceeding with a single trial. See Fed. R. Civ. P. 42(b) (allowing for severance "[f]or convenience, to avoid prejudice, or to expedite and economize").

### 3. Ridgeway USA

#### a. Against WHOI

Ridgeway USA has moved for summary judgment against WHOI on all claims brought against it, i.e. for 1) liability under the Carmack Amendment, 2) breach of bailment obligations and 3) negligence.  WHOI opposes and has cross-moved for summary judgment on the Carmack Amendment claim.

For the reasons that follow, the Court concludes that genuine disputes of material fact prevent determination upon the present motions of the liability of Ridgeway USA under the Carmack Amendment.  No such disputes exist, however, with respect to the breach of bailment and negligence claims and summary judgment will be granted to Ridgeway USA on those claims.

#### (1) Carmack Amendment

The Carmack Amendment governs the liability of carriers for lost or damaged goods and preempts state law claims relating to the same. See Rini v. United Van Lines, Inc., 104 F.3d 502, 503 (1st Cir. 1997).  The statute describes three classes of

-15-

carriers: motor carriers, water carriers and freight forwarders. 49 U.S.C. § 13102. WHOI contends that Ridgeway USA is a motor carrier or, alternatively, a freight forwarder. Ridgeway USA rejoins that it is not a carrier but rather a "forwarding agent" or, alternatively, a broker and therefore is not subject to liability under the Carmack Amendment.

### (A) Motor carrier

### (i) Legal Standard

The Carmack Amendment defines "motor carrier" as a "person providing motor vehicle transportation for compensation". 49 U.S.C. § 13102(3). The statute explains that "transportation" includes

> services related to [the movement of property], including arranging for, receipt, delivery, . . . . transfer in transit, . . . . handling . . . . and interchange of . . . . property.

49 U.S.C. § 13102(23).

The Carmack Amendment also designates certain entities as "brokers", 49 U.S.C. § 13102(2), who are not carriers and, as such, are not subject to liability under the statute, see, e.g. AIOI Ins. Co. v. Timely Integrated, Inc., No. 08-1479, 2009 WL 2474072 at *2 (S.D.N.Y. Aug. 12, 2009) (applying Carmack Amendment and holding broker not liable thereunder). Brokers include entities, other than motor carriers

> that as a principal or agent sells, offers for sale, negotiates for, or holds itself out . . . . as selling,

providing, or arranging for, transportation by motor
carrier for compensation.

49 U.S.C. § 13102(2).

The line between providing transportation, which is the
province of motor carriers, and selling it, which is the
province of brokers, is often blurry. See Essex Ins. Co. v.
Barrett Moving & Storage, Inc. 885 F.3d 1292, 1300-01 (11th Cir.
2018) (noting that the distinction is "blurry" as a textual
matter and in practice).  Compounding that analytic difficulty
is a dearth of relevant caselaw from the First Circuit Court of
Appeals ("the First Circuit").

The Court is not, however, entirely without guidance.  In
Essex Ins. Co., the Eleventh Circuit concluded, after careful
study of statutory text, applicable regulations and caselaw
within and without that circuit, that the "key distinction"
between a broker and a motor carrier was "whether the disputed
party accepted legal responsibility to transport the shipment."
Id. at 1301 (emphasis original) (citing 49 C.F.R. § 371.2(a))
(explaining that a motor carrier has "legally bound" itself to
transport goods whereas a broker has not).

Having considered the same sources and other relevant
precedent, this Court likewise concludes that Ridgeway USA is
liable under the Carmack Amendment as a motor carrier if it
accepted legal responsibility to transport the sub. Id., see
Richwell Group, Inc. v. Seneca Logistics Group, LLC, 425 F.

-17-

Supp. 3d 57, 61 (D. Mass. 2019) (holding that a party is a carrier if it takes responsibility for shipment).  If, on the other hand, it merely arranged for transportation, it is not liable as a motor carrier. Essex Ins. Co. at 1301.  The dispositive question is, therefore, whether 1) Ridgeway USA "outsource[d] its contractual responsibility" to ATS or 2) ATS (or some other entity) bore contractual responsibility for the transportation in the first instance. Id.

### (ii) Application

Based upon conflicting evidence proffered by both parties with respect to whether Ridgeway USA accepted legal responsibility to transport the sub as a motor carrier, the Court cannot enter summary judgment in favor of either party.

WHOI presents deposition testimony from, among others, Becky Hodge ("Hodge"), a Ridgeway USA employee who states that Ridgeway USA's responsibility was to take custody of the sub at Woods Hole, Massachusetts, and deliver it to the Port of Baltimore.  WHOI also directs attention to documentary evidence, including a bill of lading issued by Ridgeway USA in connection with the transportation of the sub, and stresses that Ridgeway hired a marine surveyor, John Wilson, to ensure that the sub was properly loaded onto the ATS trailer.  That purportedly demonstrates that Ridgeway USA considered itself, and was, legally responsible for the shipment.

Ridgeway USA demurs.  It claims that the Power of Attorney
("the POA") between it and the Museum makes clear that its only
responsibility was to act as the agent for the Museum in
transporting the sub.  Ridgeway USA submits that the POA
resolves the inquiry but that, in any event, the evidence
contradicts WHOI's assertion that Ridgeway USA was responsible
for the safe delivery of the sub.  To that end, Ridgeway USA
advances multiple points.  It notes that 1) the bill of lading
contained no terms and conditions and was issued for
informational purposes only, 2) the role of the marine surveyor
was limited to witnessing the loading and securing the sub onto
the ATS truck but did not extend to offering recommendations, 3)
WHOI, not Ridgeway, prepared the sub for shipment which included
loading and securing it onto the ATS truck and 4) it has no
trucks or trailers and does not itself provide transportation
services.

Ridgeway USA is correct that a party can insulate itself
from liability under the Carmack Amendment by making clear in
writing that it is "merely acting as a go-between to connect the
shipper with a suitable third-party carrier." Essex Ins. Co.,
885 F.3d at 1302.  The Court is unconvinced, however, that
Ridgeway did so here.  The shipper of the sub was WHOI, not the
Museum, and it is not apparent that Ridgeway USA can insulate
itself from liability to the shipper by representations made to

-19-

the consignee, i.e. the Museum.  In any event, the argument of
WHOI that the Museum and Ridgeway USA executed the POA only to
afford the latter with authority to execute customs-related
tasks on behalf of the Museum (and not to limit the liability of
Ridgeway USA) is as viable as Ridgeway USA's contrary
interpretation of the agreement.

Resolution of the remaining disputes requires an evaluation
of the weight and credibility of the countervailing evidence
proffered by each party.  Because that task is committed to the
trier of fact, entry of summary judgment is unwarranted. See
McConaghy v. Sequa Corp., 294 F. Supp. 2d 151, 161 (D.R.I. 2003)
(holding that a judge deciding a motion for summary judgment
"should not invade the province of the trier of fact by weighing
the evidence or making credibility determinations").

### (B) Freight forwarder

#### (i) Legal Standard

WHOI argues that, alternatively, Ridgeway USA is a freight
forwarder and thus subject to liability under the Carmack
Amendment.  That Amendment defines a freight forwarder as an
entity, other than a motor carrier, holding itself out to the
general public

> to provide transportation of property for compensation and
> in the ordinary course of its business --
>
>> a) assembles and consolidates, or provides for
>>    assembling and consolidating, shipments and performs

> > or provides for break-bulk and distribution
> > operations of the shipments;
>
> > b) assumes responsibility for the transportation from
> > the place of receipt to the place of destination; and
>
> > c) uses for any part of the transportation a carrier
> > subject to jurisdiction under [the Carmack
> > Amendment].

49 U.S.C. § 13102(8).

Ridgeway maintains that it is a "forwarding agent", not a freight forwarder, citing Chicago, Milwaukee, St. Paul & Pacific R.R. v. Acme Fast Freight, 336 U.S. 465 (1949).  The distinction is analogous to the difference between a broker and a motor carrier: in each case, the former arranges for the provision a certain service relating to the transportation of goods while the latter provides it. See id. (explaining that forwarding agents go "no farther than procuring transportation by carrier and handling the details of shipment").

### (ii) Application

As a preliminary matter, only the first two factors of 49 U.S.C. § 13102(8) are disputed because it has been established that Ridgeway USA engaged ATS, a motor carrier, to ship the sub. See Woods Hole, U.S. Dist. LEXIS 158516 at *30 (stating that "it is undisputed that ATS was operating as a 'motor carrier' pursuant to an interstate shipment at the time of the fire").

With respect to the first, the Supreme Court has held that the term "assembles and consolidates" means the assembly of

-21-

less-than-carload quantities of goods into carload shipments.
Acme Fast Freight, 336 U.S. at 484, see Gargoyle Granite &
Marble, Inc. v. Opustone, LLC, No. 21-00127, 2021 U.S. Dist.
LEXIS 225244 at *32 (D. Idaho Nov. 22, 2021) (applying standard
from Acme Fast Freight).   Such consolidation is plainly
inapplicable to the transportation of the sub which is a single,
discrete object.   WHOI contends, however, that the fact that
Ridgeway USA offers such services suffices to satisfy the first
factor, citing Byrton Dairy Products, Inc. v. Harborside
Refrigerated Services, Inc., 991 F. Supp. 977, 982 (N.D. Ill.
1997) (holding that an entity "may be classified as a freight
forwarder even if, as to the shipment under consideration, it
does not perform all the functions set forth in § 13102(8)(A),
as long as it proffers all those services").

To that end, WHOI proffers evidence that Ridgeway USA held
itself out to be a freight forwarder, including statements made
under oath by Ridgeway principal Guy Tombs ("Tombs") and
Ridgeway's terms of service, which identify it as a freight
forwarder and refer to consolidation services.   WHOI submits
that, accordingly, Ridgeway USA is a freight forwarder
regardless of whether it engaged in consolidation or assembly of
the shipment of the sub.

Ridgeway USA disputes the import of the proffered evidence
and avers that Byrton Dairy misapplies the statutory standard.

-22-

It asserts that Tombs testified that Ridgeway USA acts as an agent for its customers and that, notwithstanding the fact that its Terms of Service mentions consolidation, WHOI has furnished no evidence that Ridgeway USA actually engages in assembly and consolidation of goods.  Moreover, Ridgeway USA disagrees with the holding of Byrton Dairy and contends that it must be found to have performed such consolidation or assembly as to the shipment of the sub to be classified as a freight forwarder, which it was not.

The fact that Ridgeway USA did not assemble or consolidate goods with respect to the shipment of the sub does not, as a matter of law, negate the applicability of 49 U.S.C. § 13102(8). See Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC, No. 11-3238, U.S. Dist. LEXIS 33807 at *11-12 (S.D.N.Y. Mar. 13 2014) (declining to hold that entity was not a freight forwarder as a matter of law when it did not perform services in 49 U.S.C. § 13102(8)(a) with respect to shipment at issue), Freightliner Custom Chassis Corp. v. Landstar Ranger Inc., No. 20-1390, 2022 U.S. Dist. LEXIS 15256 at *11 (N.D.N.Y. Jan. 27, 2022) (citing Chartis and holding similarly).  The provisions of 49 U.S.C. § 13102(8)(a) are prefaced by the phrase "in the ordinary course of its business" and WHOI has proffered sufficient evidence to enable a finder of fact to conclude that Ridgeway USA provided the services listed in that subsection in

-23-

the "ordinary course of its business" even though it did not do
so with respect to the shipment of the sub. 49 U.S.C. §
13102(8).  Ridgeway USA, in turn, has provided evidence that it
acts only as a forwarding agent, i.e. a broker, and consequently
whether WHOI has shown that Ridgeway USA comes within the ambit
of 49 U.S.C. § 13102(8)(a) turns upon genuinely disputed facts
and is irresolvable at the summary judgment stage.

With respect to the second factor, whether Ridgeway USA
assumed responsibility for the shipment of the sub, the
arguments of the parties are in all material respects a reprise
of their dispute as to whether Ridgeway USA acted as a motor
carrier and are no more amenable to resolution here.

### (C) State law claims

WHOI contends that, in the alternative, Ridgeway USA is
liable for negligence and breach of bailment.  Ridgeway USA
responds that those claims are preempted by the Carmack
Amendment if Ridgeway USA is a carrier and liable thereunder,
but are unavailing in any event.

The Carmack Amendment generally preempts state common law
or statutory causes of action premised upon the liability of an
interstate motor carrier for damages or loss to goods being
transported via interstate commerce. Sokhos v. Mayflower
Transit, Inc., 691 F. Supp. 1578, 1581 (D. Mass. 1988).  WHOI
concedes that the negligence and bailment claims are pled in the

-24-

alternative and are barred by the Carmack Amendment if Ridgeway USA is a freight forwarder.  Ridgeway USA asserts, however, that the claims are unavailing even if not barred by the Carmack Amendment.

An earlier M&O adopted, in part, and rejected and modified, in part, a report and recommendation of Magistrate Judge Boal. The Court held that WHOI had alleged facts sufficient to state claims for breach of bailment and negligence as to Ridgeway based upon its purported agency relationship with ATS.  An agency relationship requires

> mutual consent, express or implied, that the agent is to act on behalf and for the benefit of the principal, and subject to the principal's control.

Theos & Sons, Inc. v. Mack Trucks, Inc., 779 N.E.2d 1113, 1119 (Mass. 2000).  A principal may be found liable for torts committed by its agent. See Merrimack College v. KPMG LLP, 108 N.E.3d 430, 437 (Mass. 2018).  A party is not, however, generally liable for the actions of its independent contractors, i.e. persons or entities with whom the party has a contractual agreement but the manner of whose performance it does not control. Cable Mills, LLC v. Coakley Pierpan Dolan & Collins Ins. Agency, Inc., 974 N.E. 2d 1134, 1140 (Mass. App. Ct. 2012) (citing Restatement (Second) of Agency § 2 (1958)).

Here, no agency relationship existed between Ridgeway USA and ATS and, therefore, WHOI cannot maintain its claims of negligence and breach of bailment.

It is undisputed that Ridgeway USA and ATS agreed that ATS would transport the sub from Woods Hole, Massachusetts to the Port of Baltimore.  WHOI has not, however, proffered evidence that Ridgeway USA exercised control over ATS's performance sufficient to establish an agency relationship, e.g. that Ridgeway USA told ATS which route to take, performed inspections of its trucks or monitored the progress which was made along the route. Fox v. Pallotta, 147 N.E. 190, 191-92 (Mass. 1931) (holding that trucker is not an agent when he "undertook to accomplish a given result by the use of his own property under his own control"), see also Graham v. Malone Freight Lines, 43 F. Supp. 2d 77, 80 (D. Mass. 1997) (applying New Jersey law and holding that defendant trucker is an independent contractor). While a marine surveyor hired by Ridgeway USA under disputed circumstances attended the loading of the sub onto the ATS truck, that fact alone does not establish that ATS was the agent of Ridgeway USA. See Fox, 174 F. Supp. 2d at 192 (finding no agency relationship where evidence showed that trucker sometimes loaded truck itself and sometimes did so with assistance from shipper).

-26-

**b. Against the Museum**

Ridgeway USA has moved for summary judgment on its claim against the Museum for indemnification as to the claims asserted against it by WHOI.  Ridgeway USA contends that it is entitled to indemnification pursuant to its Power of Attorney ("the POA") from the Museum

The Museum vehemently disagrees.  It avers that the "Terms of Service" provisions which purportedly impose upon it the obligation to indemnify Ridgeway USA are unauthenticated, unenforceable and applicable only if Ridgeway USA is classified a freight forwarder under the Carmack Amendment, a classification which Ridgeway USA disclaims (and whose applicability the Court, as previously discussed, has found not subject to resolution upon summary judgment).  In addition, the Museum submits that Ridgeway USA's motion should be denied because it has failed to demonstrate why Massachusetts law applies to the "Terms of Service" which themselves purport to be governed by English law.

A right to indemnification may arise from 1) an express agreement, 2) a contractual right implied from the nature of the relationship between the parties and 3) a common law tort-based right. See Araujo v. Woods Hole, Martha's Vineyard, Nantucket Steamship Auth., 693 F.2d 1, 2 (1st Cir. 1982).  Ridgeway USA

asserts that it is entitled to indemnification from the Museum under the first theory.

It is undisputed that the parties entered into an express agreement, i.e. the POA.  The POA is entitled "Power of Attorney Designation as Export Forwarding Agent and Acknowledgment of Terms and Conditions".  It states, <u>inter</u> <u>alia</u>, that the "grantor", here the Museum,

> acknowledges receipt of Ridgeway Intl. USA Terms and
> Conditions of Service governing all transactions between
> the Parties.

Ridgeway USA has proffered a document entitled "Terms of Service" ("the TOS") which, it submits, are the terms and conditions referred to by the POA.  Clause 38 of the TOS provides that Ridgeway USA, to the extent it acts as an agent of the Museum, "shall not be liable for the acts and omissions" of third parties with whom it contracts on the Museum's behalf. Clause 39 provides that the Museum "shall defend, indemnify and hold harmless" Ridgeway in connection with the procurement of the services required by the Museum, i.e. transportation of the sub, except to the extent of Ridgeway's own negligence. Ridgeway USA concludes that it is entitled to indemnification and defense under Clauses 38 and 39 of the TOS, incorporated by reference into the POA.

The Museum raises several arguments against indemnification which, although they are unavailing, the Court addresses for the sake of completeness.

First, the Museum questions the authenticity of the TOS. It disparages the TOS as an "unauthenticated print out [sic] from a website" and notes that, while the POA refers to "Terms and Conditions" the TOS is entitled "Terms of Service". Those arguments are underwhelming. Ridgeway USA has proffered the deposition testimony of Tombs and Hodge both of whom stated that the TOS was posted on the Ridgeway USA website well before 2015 and that its contents had remained substantially the same since 1988. In rebuttal, the Museum offers nothing more substantial than speculation which is insufficient to conjure a genuine dispute of fact. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Second, the Museum contends that the TOS calls for the application of English law and, because Ridgeway USA has not provided any guidance with respect to the interpretation of the TOS under English law, its motion for summary judgment must be denied. It is, however, the proponent of foreign law who bears the burden of "outlin[ing] the substance of that law with reasonable certainty", Sexual Minorities Uganda v. Lively, 960 F. Supp. 2d 304, 332 (D. Mass. 2013), and parties who fail to provide requisite notice of foreign law waive their right to

have it applied, see Carey v. Bahama Cruise Lines, 864 F.2d 201, 205 (1st Cir. 1988).  The Museum had ample opportunity during the three-and-a-half years that this litigation had been pending before Ridgeway USA filed its motion for summary judgment to provide notice of the application and effect of English law. It has not done so.  Accordingly, the Court considers any argument that foreign law applies to the TOS to be waived.

Finally, the Museum insists that the TOS is ambiguous and does not yield a clear indication that Ridgeway USA is entitled to indemnification.  Although the TOS contains grammatical errors and is, overall, less than artfully drafted, its meaning is unambiguous.

Nevertheless, summary judgment in favor of Ridgeway USA will be denied because it cannot be determined as a matter of law that Ridgeway USA was acting as an agent of the Museum when it secured transportation for the sub.  The Court has concluded that factual disputes prevent the resolution of a substantially similar inquiry (albeit one dependent upon the terminology of the Carmack Amendment) with respect to the motion of WHOI for summary judgment against Ridgeway USA.  The same questions, e.g. whether Ridgeway USA provided transportation services or merely arranged for their provision on behalf of ATS, bear upon Ridgeway USA's status as an agent and cannot be resolved in the context of the present motion.

In sum, if Ridgeway USA is found to have been an agent of the Museum, it is entitled to indemnity under the POA unless an exclusion in that agreement applies.  If, on the other hand, it is found to have been a principal, it is not entitled to indemnity.[3]

### 4. Ridgeway Australia

Ridgeway Australia has moved to dismiss the claims of the Museum for indemnification and contribution. The Museum opposes that motion.

### a. Indemnification

As explained in the context of the motion of Ridgeway USA for indemnity from the Museum, a right of indemnification under Massachusetts law may arise under three theories. See Araujo, 693 F.2d at 2.  The Museum asserts that the second and third theories, implied contractual indemnity and tort-based equitable indemnity, respectively, apply here.

### (1) Implied contractual indemnity

Under Massachusetts law, a right to contractual indemnification will be implied only when 1) there are "unique special factors" demonstrating that the parties intended for the indemnitor to bear liability or 2) there is a "generally

---

[3] Ridgeway USA may still be entitled to indemnification if it is a principal, albeit from ATS and under the Carmack Amendment. See Woods Hole, 2021 U.S. Dist. LEXIS 158516 at *32-33.

recognized special relationship" between the parties. Fireside Motors, Inc. v. Nissan Motor Corp., 479 N.E.2d 1386, 1391 (Mass. 1985).

Ridgeway Australia first contends that there is no contract between it and the Museum and, therefore, no implied contractual indemnification. See Kelly v. Dimeo, Inc., 581 N.E.2d 1316, 1317 (Mass. App. Ct. 1991) (requiring a binding contract from which indemnification can be implied) (citing H.P. Hood & Sons, Inc. v. Ford Motor Co., 345 N.E.2d 683, 689 (Mass. 1976)). A valid contract exists if, at the time of execution, the parties 1) agreed on all of the material terms, 2) had the present intention to be bound by that agreement and 3) supported it with sufficient consideration. See Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 201 (1st Cir. 2004), Situation Mgmt. Sys., Inc. v. Malouf, Inc., 724 N.E.2d 699, 703 (Mass. 2000). The manifestation of such an agreement "generally consists of an offer by one and the acceptance of it by the other." I & R Mech., Inc. v. Hazelton Mfg. Co., 817 N.E.2d 799, 802 (Mass. App. Ct. 2004).

The Museum has proffered evidence from which a jury could reasonably conclude that a contract existed between it and Ridgeway Australia. That evidence includes deposition testimony of Annabelle Berriman ("Berriman"), a Museum employee, concerning communications between her and Michael King ("King"),

the sole employee of Ridgeway Australia, about the transportation of the sub. She testified about an "indication", i.e. a quote, sent by King to the Museum in which King listed the services to be provided to the Museum and asked for acceptance of the costs for transporting the sub to Australia. The Museum submits that it accepted the "indication" and that the evidence demonstrates that it entered a contract with Ridgeway Australia for the shipment of the sub from Woods Hole, Massachusetts to Australia.

Ridgeway Australia rejoins that the communications between King and the Museum did not constitute a binding contract but rather merely an understanding that Ridgeway Australia would assist the Museum's primary contractor, National Transport Security and Services ("NTSS"), as needed with respect to the shipment. It contends that the "indication" contained a list of services that were to be provided by several different companies and avers that its role was limited to the transportation of the sub from the Australian port to the Museum, a task which, due to the fire, it never performed. While a jury could credit the evidence proffered by Ridgeway Australia and find that no contract between it and the Museum existed, the Court cannot so conclude as a matter of law. See Doe v. Trs. of Boston Coll., 892 F.3d 67, 88 (1st Cir. 2018) (applying Massachusetts law and explaining that question of contract formation is one for the

-33-

factfinder where the "evidentiary foundation" of the contract is disputed).

Ridgeway Australia maintains that, in any event, there is no evidence that there were "unique special factors" or a "generally recognized special relationship" at play which could support implied indemnification. Fireside Motors, 479 N.E.2d at 1391. The Court agrees. Nothing in the communications between the parties or the so-called "indication" suggest the existence of "special factors" which could imply an obligation to indemnify. Id. at 1391. Furthermore, any agency that might constitute a "generally recognized special relationship" was formed, if at all, between the Museum and Ridgeway USA, not Ridgeway Australia. Id., see In re Air Crash near Peggy's Cove, 99-5998, 2004 U.S. Dist. LEXIS 22296 at *29 (E.D. Pa. Nov. 2, 2004) (listing relationships that may imply contractual indemnity). Accordingly, the Museum is not entitled to indemnification arising from its contract, if any, with Ridgeway Australia.

### (2) Equitable indemnity

The Museum is likewise not entitled to equitable indemnification. Common law tort-based equitable indemnification is designed to shift the whole loss upon the more culpable of two tortfeasors. Aruajo, 693 F.2d at 3. It is available to a party which did not join in the negligent act of

-34-

another but was nevertheless exposed to liability because of
that act. <u>Hernandez</u> v. <u>City of Boston</u>, 277 F. Supp. 3d 176, 180
(D. Mass. 2017).

Here, the Museum seeks indemnity for any liability it may
incur with respect to the claims for breach of contract and
breach of bailment asserted against it by WHOI.  While breach of
bailment may as a general matter sound in tort, WHOI's claim for
breach of bailment sounds in contract. <u>See</u> <u>Woods Hole</u>, 2021 U.S.
Dist. LEXIS 158516 at *43 (holding that WHOI's "breach of
bailment claim against the Museum in this case is clearly
contract-based").  There is therefore no chance that the Museum
will be held liable as a joint tortfeasor and, accordingly,
tort-based equitable indemnity is unavailable to it. <u>See</u> <u>Walter</u>
v. <u>Shuffain, P.C.</u> v. <u>CPA Mut. Ins. Co.</u>, No. 06-10163, 2008 U.S.
Dist. LEXIS 25422 at *24 (D. Mass. Mar. 28, 2008) (explaining
that liability "must spring from the same theory, not merely the
same harms").

### b. Contribution

The Museum's claim for contribution falters for the same
reason.  Contribution is available only where two or more
parties become jointly liable in tort and the Museum's
liability, if any, derives from contract. <u>See</u> <u>Dighton</u> v. <u>Federal</u>
<u>Pacific Elec. Co.</u>, 506 N.E.2d 509, 512 (Mass. 1987).  While that
rule appears to have been occasionally relaxed to accommodate

-35-

parties whose liability, though deriving from statute, possessed a close analogue in tort, such is not the case here. See, e.g. Wolfe v. Ford Motor Co., 434 N.E.2d 1008, 1009 (Mass. 1982).

### 5. The Museum

The final motion for summary judgment under consideration is brought by the Museum against WHOI as to all claims asserted by WHOI against it and one counter-claim, for indemnification, that it asserts against WHOI. In response, WHOI has cross-moved for judgment on liability with respect to its claims for breach of contract and breach of bailment against the Museum.

Several of the issues presented by the Museum's motion have been addressed in the M&O issued by the Court in August, 2021. See Woods Hole, 2021 U.S. Dist. LEXIS 158516 at *25-27 (estopping WHOI from arguing that the value of the sub exceeded $5 million but declining to limit the damages available to WHOI to $1.1 million). Unresolved is the liability, if any, of the Museum to WHOI for breach of bailment and breach of contract and whether WHOI owes indemnification to the Museum or, conversely, whether the Museum owes indemnification to WHOI.

### a. Breach of contract and breach of bailment

To prevail on a breach of contract claim under Massachusetts law a plaintiff must

> demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or

-36-

her part of the contract; the defendant committed a breach
of the contract; and the plaintiff suffered harm as a
result.

Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 39 (Mass. 2016).

Here, the parties dispute only breach and damages.  WHOI
asserts that because the Loan Agreement obligated the Museum to
receive the sub at Woods Hole, Massachusetts, and not "do or
permit anything . . . . which may cause any damage" to it, the
fire damage sustained by the sub while in transit constitutes a
breach of contract.  WHOI submits that it has sustained
significant damages due to the breach.

The Museum propounds a panoply of defenses, the most
developed of which is the purported lack of damages suffered by
WHOI beyond the $3.9 million reimbursed by its insurer.  In the
Court's prior M&O, it found that WHOI may have suffered damages
in excess of $3.9 million and, accordingly, the Museum's
arguments to the contrary here are unavailing. See Woods Hole,
2021 U.S. Dist. LEXIS 158516 at *26-27.  The Court does not
address the Museum's remaining defenses which are underdeveloped
and underwhelming.

The Museum is not, however, liable for breach of bailment
which requires, inter alia, a failure to exercise due care, even
when, as here, the claim sounds in contract. See Aimtek, Inc. v.
Norton Co., 870 N.E.2d 1114, 1118 n.4 (Mass. App. Ct. 2007)
(explaining that "regardless of whether a bailment claim is

-37-

brought in tort or contract, the breach of a bailment is described in negligence terms, as one of a duty of care"). Even if there was a bailment here, there is no evidence that the Museum failed to exercise due care in hiring Ridgeway Australia, Ridgeway USA or ATS. Id., accord Danner v. Int'l Freight Systems of Wash., LLC, 855 F. Supp. 3d 433, 450-51 (D. Md. 2012) (holding that bailee not strictly liable for loss of bailed property) (citing Richard A. Lord, 19 Williston on Contracts §53:11 at 52-54 (4th ed. 2001, 2011 Supp.)). Accordingly, WHOI's motion for summary judgment with respect to the breach of bailment claim will be denied.

### b. Indemnification

The Museum asserts that it is entitled to indemnification by WHOI under the Loan Agreement and, conversely, that it has no obligation to indemnify WHOI. Section 13.1 of the Loan Agreement provides that

> [e]ach party indemnifies the other against all actions . . . . . directly or indirectly arising out of, relating to or in any way connected with any breach of this agreement by it.

The Museum breached the Loan Agreement and therefore WHOI is entitled to be indemnified for any actions "arising out of, relating to" or connected to the breach. The Museum protests that no such actions have been brought against WHOI but that argument is belied by the fact that the Museum itself has sued

WHOI for, <u>inter</u> <u>alia</u>, breach of contract. <u>See</u> <u>Caldwell Tanks,</u>
<u>Inc.</u> v. <u>Haley & Ward, Inc.</u>, 471 F.3d 210, 216 (1st Cir. 2006)
(holding that Massachusetts law "has not adopted a special rule
that requires that indemnity contracts be read as only applying
to third parties unless there is explicit language to the
contrary"), <u>Starbrands Capital LLC</u> v. <u>Original MW Inc.</u>, No. 14-
12270, 2015 U.S. Dist. LEXIS 121454 at *5 (D. Mass. Sept. 11,
2015) (holding similarly).  Because the Museum bases its
argument on the putative lack of claims against WHOI, its motion
will be denied.[4]

     Finally, the Museum is not entitled to be indemnified by
WHOI because WHOI has not breached the Loan Agreement.  The
Museum asserts that WHOI has failed to engage in the alternate
dispute resolution ("ADR") as provided in the Loan Agreement
but, except for the obligation to make a reasonable effort to
resolve the dispute by negotiation, the ADR provision is couched
in discretionary language, e.g. that either party "may submit
the dispute to mediation", and WHOI's decision not to do so does
not constitute a breach.

**III. <u>Motions to Strike</u>**

     Also pending before the Court are four motions to strike.
Ridgeway USA, the Museum, ATS and TCA have moved to preclude the

---

[4] Ridgeway USA has joined the Museum's motion against WHOI and,
for the same reasons, its motion will be denied.

testimony of Joseph DiTuri, an expert witness proffered by WHOI. Were DiTuri to testify, he would offer an opinion that the value of the sub was approximately $65 million.  Because the Court has previously held that WHOI is, with respect to the Museum, Ridgeway USA and ATS, estopped from arguing that the value of the sub exceeds $5 million, such testimony would be inadmissible and the motion to strike will be allowed. See Woods Hole, 2021 U.S. Dist. LEXIS 158516 at *25-26.

While there is no indication that TCA similarly relied upon the representation of WHOI that the value of the sub did not exceed $5 million, the Court has held in its prior M&O that a jury finding that the value of the sub was anything other than $5 million would amount to "pure speculation". Id.  DiTuri's opinion is similarly speculative and does nothing to change that holding.  Accordingly, TCA's motion will also be allowed.

## IV.  Motion for Taxation of Costs

Finally, STTC, formerly a defendant in this action, has moved for taxation of costs against WHOI of approximately $30,000.  WHOI opposes and requests that any award of costs be limited to approximately $5,000 and be charged against the Museum.

WHOI named STTC as a defendant in its complaint filed in November, 2017, and alleged that STTC was negligent in repairing the Trailer, causing the fire and consequent damage to the sub.

-40-

In August, 2020, STTC filed a motion for summary judgment with respect to that claim and a similar cross-claim filed by the Museum.  STTC's motion was allowed in January, 2021, and, after the Court allowed its subsequent motion for separate and final judgment, STTC filed the pending motion for costs.  It seeks reimbursement for deposition transcripts which it ordered and for copying expenses.

### A. Legal Standard

Fed. R. Civ. P. 54(d)(1) provides that costs, other than attorneys' fees, may be awarded to a prevailing party unless a federal statute, the federal rules or a court order provides otherwise.  Costs may include, <u>inter alia</u>, fees for printed or electronically recorded transcripts that are "necessarily obtained for use in the case" and fees for making copies of the same. 28 U.S.C. § 1920(2), (4).  Whether a transcript was "necessarily obtained" is a finding of fact to be made by the Court. <u>See Piester</u> v. <u>IBM</u>, No. 97-2300, U.S. App. LEXIS 9771 at *3 (1st Cir. May 14, 2998), <u>Hillman</u> v. <u>Berkshire Med. Ctr., Inc.</u>, 867 F. Supp. 2d 122, 127 (D. Mass. 2012) (applying <u>Piester</u>).

A party seeking to recover costs must show that, at the time the deposition was taken, it reasonably expected the deposition to be necessary for trial preparation rather than merely for discovery. <u>Hillman</u>, 876 F. Supp. 2d at 127.  Costs

are generally recoverable for deposition transcripts which are introduced in evidence or used at trial. Modeski v. Summit Retail Solutions, Inc., No. 18-12383, 2020 WL 5026726 at *2 (D. Mass. Aug. 25, 2020).  Otherwise, costs are recoverable at the discretion of the Court if "special circumstances" exist such as, for example, when the prevailing party relied upon the transcript in a successful motion for summary judgment. See id. Upon showing that a deposition was necessary, a prevailing party is entitled to recover only the cost of one original copy and one certified copy of that transcript. Brigham and Women's Hospital, Inc. v. Perrigo Company, 395 F. Supp. 3d 168, 172 n.1 (D. Mass. 2019).

### B. Application

Of the approximately $30,000 sought by STTC, only approximately $2,500 relates to three depositions which it cited in its motion.  The remainder concerns transcripts for 31 other depositions and non-itemized copying costs.

WHOI does not contest that STTC is entitled to costs for 1) copies of transcripts of those three depositions 2) copies of transcripts of depositions noticed by WHOI which amount to approximately $1,700 and 3) its copying costs, in full, which amount to approximately $1,600.  It disputes the entitlement of STTC's claim to what it characterizes as an inordinate number of

depositions taken at the behest of other parties and its
obligation to pay such costs.

The cost of the transcripts of the three depositions cited
in the dispositive motion will be divided equally between WHOI
and the Museum.  The costs for the depositions noticed by WHOI
and the copying costs, both of which are not contested, will be
borne by WHOI.  STTC is not entitled to costs for the remaining
depositions because the requisite "special circumstances" do not
exist. See Modeski, 2020 WL 5026726 at *2.

ORDER

For the foregoing reasons,

- the motion of the Australian National Maritime Museum
  ("the Museum") for summary judgment or, alternatively,
  for "partial" summary judgment against Woods Hole
  Oceanographic Institute ("WHOI") (Docket No. 476) is,

    o with respect to the breach of bailment claim
      (Count XIII), **ALLOWED,** but

    o otherwise, to the extent not addressed by a prior
      order of this Court (see Docket No. 674), **DENIED;**

- the cross-motion of WHOI for summary judgment against
  the Museum (Docket No. 578) is,

    o with respect to WHOI's claim for breach of
      contract (Count XII), **ALLOWED,** but

    o otherwise, **DENIED;**

- the cross-motion of Ridgeway International USA
  ("Ridgeway USA") (Docket No. 525) joining in the
  Museum's motion for summary judgment against WHOI is,
  to the extent not addressed by a prior order of this
  Court (see Docket No. 674), **DENIED;**

— the motion of Ridgeway International Australia Limited ("Ridgeway Australia") for summary judgment against the Museum (Docket No. 478) is **ALLOWED**;

— the motion of Ridgeway USA for summary judgment against the Museum (Docket No. 483) is **DENIED**;

— the motion of Ridgeway USA for summary judgment against WHOI, Eagle Underwriting Group, Inc., ("Eagle") and its underwriters ("the Underwriters") (Docket No. 486) is,

- o to the extent Ridgeway USA seeks an order that it is not liable under the Carmack Amendment as a matter of law, **DENIED**; and

- o to the extent Ridgeway USA seeks dismissal of the breach of bailment and negligence claims (Counts VI and VII), **ALLOWED**;

— the cross-motion of WHOI for summary judgment against Ridgeway USA (Docket No. 575) for liability under the Carmack Amendment is **DENIED**;

— the motion of the Museum for summary judgment against Ridgeway Australia (Docket No. 517) is **DENIED**;

— the motion of Eagle and the Underwriters for summary judgment against Ridgeway USA (Docket No. 562) is,

- o with respect to Counts I and II of Ridgeway's third-party complaint,

    - ▪ as to Eagle, **ALLOWED**; but

    - ▪ as to the Underwriters, **DENIED**;

- o with respect to Count III, **DENIED**;

— the motion of Eagle for summary judgment against the Museum (Docket No. 565) is,

- o with respect to the first amended cross-claim, **DENIED**, but

- o with respect to the second amended cross-claim, **ALLOWED**;

- the motion of Eagle and its underwriters to sever and stay the M.G.L. c. 93A claims (Docket No. 493) is **DENIED**;

- the motion of the Museum (Docket No. 605) to strike the motion for summary judgment filed by Eagle is **DENIED**;

- the motions of the Museum et al. (Docket Nos. 653, 657, 659 and 665) to preclude testimony of expert witness Dr. Joseph DiTuri is **ALLOWED**; and

- the motion of Service Tire Truck Center, Inc. ("STTC"), for taxation of costs (Docket No. 598) is,

  - o with respect to copying costs, **ALLOWED**;

  - o with respect to transcripts of depositions, to the extent those depositions were noticed by WHOI or cited in STTC's motion for summary judgment, **ALLOWED**; but

  - o otherwise, **DENIED**.

STTC is awarded $5,796.31 in costs, of which $4,554.61 is taxed against WHOI and $1,241.70 against the Museum.  To the extent other parties seek attorneys' fees or costs, those requests are premature and are therefore **DENIED without prejudice.**

**So ordered.**

　　　　　　　　　　　　　　 /s/ Nathaniel M. Gorton
　　　　　　　　　　　　　 Nathaniel M. Gorton
　　　　　　　　　　　　　 United States District Judge

Dated March 29, 2022